**MUTUAL OF OMAHA INSURANCE COMPANY, a Nebraska corporation, Appellee,**

v.

**Franklyn NOVAK, an Individual, Appellant.**

No. 85–1019.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1985.

Decided Oct. 16, 1985.

Warren C. Schrempp, Omaha, Neb., for appellant.

Dennis L. Thomte, Omaha, Neb., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and PHILLIPS,* Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Franklyn Novak appeals from a preliminary injunction forbidding him from violat-

---

* The HONORABLE HARRY PHILLIPS, Senior Circuit Judge United States Court of Appeals for the Sixth Circuit, sitting by designation. Judge Phillips participated in the oral argument and at conference agreed with the vote of the court. However, due to his untimely death he did not have an opportunity to review the opinion.

ing the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) (1982), by marketing T-shirts, mugs and other products prominently featuring the words "Mutant of Omaha" and "Mutant Kingdom" and bearing a logo resembling the Indianhead logo used by Mutual of Omaha Insurance Company. He argues that there was no confusion or likelihood of confusion as to the origin of the T-shirts and mugs, that Mutual has not sustained irreparable injury, that his activities were political comments on an issue of national concern protected by the first amendment and, finally, that the products were good faith parody and satire and thus not a violation of the Lanham Act. We conclude that the district court did not abuse its discretion in granting the preliminary injunction but remand to the district court for early disposition of the case on the merits.

Mutual of Omaha is a Nebraska corporation involved in the insurance business and has used that name since 1944. In 1952 it obtained a trademark registration for its Indianhead logo containing the words "Mutual of Omaha". In 1973 and 1978 Mutual of Omaha obtained trademark registration for the service mark "Wild Kingdom" and "Mutual of Omaha's Wild Kingdom" to be used in connection with a wildlife television program.

In April 1983 Novak, an artist, produced a design using the words "Mutant of Omaha". The design, as found by the district court, utilized "an accompanying logo depicting a side view of a war bonneted and emaciated human face". The design initially was placed on T-shirts but later also on sweatshirts, caps, buttons and coffee mugs. In the spring of 1984 Novak produced designs using the words "Mutant Kingdom" and "Mutant of Omaha's Mutant Kingdom" and an accompanying logo depicting a one-eyed tiger. With these designs he often used the phrase "Nuclear Holocaust Insurance" or "Sponsored by Mutant of Omaha Nuclear Insurance Company."

Novak actively marketed these items to the public and they were wholesaled to retail shops and offered for sale at exhibitions and fairs. He has advertised on television, newspaper, and in magazines, and has sold the items to the general public through an unincorporated company called "Mutants of Omaha." The district court observed that he marketed the products "primarily as vehicles for expressing opposition to nuclear arms." *Mutual of Omaha Ins. Co. v. Novak,* Civ. 84–0–581 Mem.Op. at 11 (D.Neb. Nov. 30, 1984).

Mutual uses its trademarks and logos on T-shirts, sweat shirts, caps, coffee mugs, and label patches. They are not sold to the general public but are offered for sale to agents and company representatives who in turn use them as gifts or incentives.

Mutual brought this infringement action claiming violation of the Lanham Act and the Nebraska Uniform Deceptive Trade Practices Act. The district court reached only the Lanham Act issues in granting the preliminary injunction. The court's inquiry faithfully followed the four part analysis set forth in *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109 (8th Cir. 1981), in which we recited the standard by which to determine whether a preliminary injunction should issue. In *Dataphase* we held that in determining whether to issue a preliminary injunction a court will consider (1) the threat of irreparable harm to the movant; (2) the probability that the movant will succeed on the merits, (3) the state of balance between this harm and harm to other interested parties; and (4) the effect on public interest. *Id.* at 112, 114.

Applying the *Dataphase* approach with close regard to our decision in *Squirt Co. v. 7–Up Co.,* 628 F.2d 1086, 1090–91 (8th Cir.1980), the district court found that Mutual had made a substantial showing of probable success on the merits. In its analysis the court considered the strength and validity of Mutual's trademarks, and the similarity between the trademark and Novak's design. The court also noted at least four incidents in which mail addressed to "Mutants of Omaha" was delivered to Mutual. In conclusion the court stated:

[P]laintiff's strong and distinctive trademarks, the extensive and obvious

similarity between plaintiff's marks and defendant's designs, defendant's intent to associate his products with plaintiff, and the relevance of the other factors to the extent that they are applicable, all weigh in favor of likelihood of confusion. Therefore, the Court finds that plaintiff has shown a probability of success on the merits of its Lanham Act claims.

*Mutual of Omaha Ins. Co. v. Novak,* Civ. 84–0–581, Mem.Op. at 14 (D.Neb. Nov. 30, 1984). Having found that Novak's conduct created a likelihood of confusion between his design and Mutual's trademark, the court concluded that a threat of irreparable injury was present. Without a preliminary injunction, the court concluded, the confusion likely to be generated by defendant's designs "could injure plaintiffs valuable business reputation and goodwill and constitutes harm that is irreparable." *Mutual of Omaha Ins. Co.,* Mem.Op. at 15.

The district court rejected Novak's argument that its designs were speech protected by the first amendment. The court noted that the first amendment does not entitle an individual to infringe on a trademark. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206 (2d Cir.1979) (fact that defendants movie may convey a message does not entitle them to appropriate plaintiff's trademark); *Accord, Coca-Cola Company v. Gemini Rising, Inc.,* 346 F.Supp. 1183, 1192–93 (E.D.N.Y.1972). The court further noted that Mutual's property interest in its trademark need not "yield to the exercise of first amendment rights under circumstances where adequate alternative avenues of communication exist." Mem.Op. at 13, *Mutual of Omaha Ins. Co. v. Novak* (quoting *Lloyd Corporation v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) ). The court concluded that Novak had alternative means through which to communicate his message.

Turning to the third step in the *Dataphase* analysis, the court balanced Novak's need for a medium through which to express his views against the potential threat to Mutual's business. The court found that Mutual faced substantial and potentially irreparable injury to its business reputation

and goodwill. Having found that Novak had alternative means through which to express his views, the court concluded that the balance of equities favored Mutual.

The court also rejected Novak's argument that his designs were good faith parodies and not subject to the Lanham Act. The court held that a validly established trademark may be protected from ridicule which rises to the level of infringement of the mark. *Gucci Shops, Inc. v. R.H. Macy & Co., Inc.,* 446 F.Supp. 838, 840 (S.D.N.Y. 1977). Finally, the court refused to find that the defense of laches barred Mutual's right to a preliminary injunction. The court found that, on the facts of this case, Mutual's one year delay in bringing its suit for infringement was insufficient to create a defense of laches. In conclusion, the court found that the public interest in avoiding confusion in the market due to trademark infringement weighs in favor of issuing injunctive relief for Mutual. Based on these findings, Novak was temporarily enjoined from using these designs pending a trial on the merits of the case.

Novak appealed and sought stays of the injunction in both the district court and this court, which were denied. He argued that the preliminary injunction should be vacated because the evidence was grossly insufficient under the Lanham Act to support injunctive relief. He argues that there is no evidence establishing actual confusion or likelihood of confusion, or irreparable injury. He concludes that where such evidence is lacking his first amendment rights must prevail. He further argues that the products were a legitimate parody and are protected as fair comment.

Our role in cases such as this one is limited. We have said "review of a grant or denial of preliminary relief is limited to determining whether the district court abused its discretion." *Hiland Potato Chip Co. v. Culbro Corp., et al.,* 671 F.2d 1190 (8th Cir.1982) (quoting *Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Department of Public Welfare,* 602 F.2d 150, 152 (8th Cir.1973) ).

So considered, we cannot reverse the order of the district court. It carefully ana-

lyzed the facts before it and balanced the equities under the standards set out in *Dataphase*. We have set out in some detail above the court's reasoning and analysis. Its analysis of the critical issue, the likelihood of success on the merits, involved careful consideration of the applicable law. We cannot conclude from the record that any of its findings of fact are clearly erroneous. Under these circumstances we cannot conclude that there is an abuse of discretion.

We need not devote further discussion to this case. The appeal is on a preliminary injunction and it must be tried on the merits. At that time findings of fact will be made, legal conclusions reached and a final determination entered. Our review of the merits must, and appropriately should, await the fuller development of the record. Accelerated disposition of this case is desirable. The preliminary injunction shall remain in effect until such time as the district court issues its further ruling. We remand the case and request that the district court give it priority.