**AMERICAN CUSTOMS BROKERS CO., Plaintiff,**

v.

**UNITED STATES CUSTOMS SERVICE, Defendant.**

**Court No. 86–04–00526.**

United States Court of International Trade.

May 27, 1986.

Law Offices of Leonard M. Fertman (Leonard M. Fertman and Donald A. Rezak), Los Angeles, Cal., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office and Nancy Reich, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

RESTANI, Judge:

Plaintiff American Customs Brokers (ACB) is a licensed customhouse broker. As such, it enters goods as an agent of the importer of record or as the importer of record itself. When immediate delivery is involved, it exercises the immediate delivery privileges of its principal, the importer of record, in the first instance, and it exercises its own immediate delivery privileges in the latter case.[1] In late March, the United States Customs Service (Customs) discontinued plaintiff's immediate delivery privileges for an indefinite period, ostensibly because ACB listed erroneous social security or tax identification numbers on entry papers of a number of automobiles which were entered under bond pending installation of emissions control and automobile safety equipment meeting U.S. standards.[2] In addition, ACB was denied the right to act as a broker on any transaction involving the immediate delivery privileges of any other party acting as importer of record. Approximately one month after the discontinuance of the privileges, plaintiff filed a complaint seeking a temporary restraining order, and preliminary and permanent injunctions reinstating these privileges. The court issued a temporary restraining order on April 30, 1986, barring Customs from continued implementation of the revocation pending disposition of plaintiff's motion for a preliminary injunction, now before the court.

---

[1] 19 U.S.C. § 1448(b) (1982) authorizes the Secretary of the Treasury to provide by regulation for the issuance of special permits for delivery, prior to formal entry. The holder of an immediate delivery privilege may secure the immediate release of imported goods by submitting certain documentation to the customs inspector for examination at the port of entry. If the documents are in order, the merchandise is released immediately without advance payment of the duty. In some situations a bond must also be posted to obtain release. The documents are then returned to the broker, who must thereafter complete the entry documents and pay the duty. 19 C.F.R. §§ 142.21—142.29 (1985).

[2] Other charges including failure to maintain power of attorney forms on file have been made. The information provided the court by the government on the additional charges is minimal and the standards for preliminary injunction were not discussed in terms of those charges.

The parties do not dispute the following facts underlying the action. In May of 1985, Customs seized two vehicles entered by ACB because the entry identification numbers were not social security numbers issued by the Social Security Administration.[3] Shortly thereafter, ACB provided the correct numbers and the vehicles were released. On November 27, 1985, ACB received a letter from Customs informing it that an audit of the firm would be conducted by Customs on December 12, 1985, to determine compliance with customs regulations. Upon completion of the audit, Customs concluded that of the 242 entries into the Los Angeles, California district that contained erroneous social security numbers in identifying importers of record, 102 were entries in which ACB had acted as broker.[4] In response to this finding, Customs decided to take the action challenged here. On March 28, 1986, Aileen Colon, Chief Inspector of Customs at Terminal Island, orally informed representatives of ACB of Customs' decision. Subsequently, plaintiff's representatives had several discussions with Customs in an attempt to identify reasons for the discontinuance and to persuade Customs to reinstate the privileges. When these discussions proved unsatisfactory to plaintiff, plaintiff filed suit in this court.

Plaintiff contends that, at a minimum, it was entitled to written notice and an opportunity to respond before Customs could discontinue its privileges. It claims that the procedures followed by Customs deprived it of its right to procedural due process, rendering the discontinuance invalid. Thus, plaintiff seeks to have its privileges reinstated until the matter can be resolved on the merits.

The Court of Appeals for the Federal Circuit has defined the criteria for issuance of a preliminary injunction as follows:

(1) the threat of immediate irreparable harm;

(2) the likelihood of success on the merits;

(3) whether the public interest would be better served by issuing rather than by denying the injunction; and

(4) whether the balance of hardships on the parties favors issuing the injunction.

*Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983); *S.J. Stile Associates, Ltd. v. Snyder*, 68 CCPA 27, 30, 646 F.2d 522, 525 (Fed.Cir.1981); *Azurin v. United States*, 10 CIT —, 632 F.Supp. 30, 31–32 (1986).

To demonstrate irreparable injury, plaintiff must prove that unless the injunction is awarded, some harm will result to it that cannot be reasonably redressed in a court of law. *National Juice Products Association v. United States*, 10 CIT —, 628 F.Supp. 978, 984 (1986) (citing *Manufacture de Machines du Haut Rhin v. Von Raab*, 6 CIT 60, 569 F.Supp. 877, 881–82 (1983)). In making this determination, the court must focus on the immediacy of the harm and the adequacy of future corrective relief. *S.J. Stile*, 63 CCPA at 30, 646 F.2d at 525 ("A presently existing, actual threat must be shown."); *Azurin*, 10 CIT at —, 632 F.Supp. at 32 ("An injury is irreparable if it cannot be undone through monetary remedies."); *National Juice Products*, 10 CIT at —, 628 F.Supp. at 984 (the magnitude of the injury is not critical, rather the immediacy of the injury and the adequacy of the future relief).

It does not appear to be disputed here that immediate delivery privileges are an

**3.** A person or entity engaged in Customs transactions is required to file Customs Form 5106 with its first formal entry or the first request for services that will result in the issuance of a bill or a refund check. Customs then issues an identification number, which can be the Internal Revenue Service employer number, a social security number, or a number assigned by Customs. 19 C.F.R. § 24.5 (1985). Because of the three digit, two digit, four digit pattern of the numbers submitted on the entry forms of plaintiff, Customs understood a social security number to be used.

**4.** It is not clear from the record whether the number of noncomplying numbers submitted by plaintiff was 102 or 104. This minor discrepancy is not material.

important part of plaintiff's operations. In addition, plaintiff has submitted affidavits (and has produced detailed testimony) that demonstrate that it has lost existing business accounts and has had to forego business opportunities due to the revocation of its immediate delivery privileges. There appears to be evidence of substantial harm to business good will, business reputation and a significant loss of new business. *See Lois Jeans & Jackets, U.S.A., Inc. v. United States,* 5 CIT 238, 242, 566 F.Supp. 1523, 1527 (1983) (Customs order to redeliver goods enjoined where loss of past and future sales and injury to reputation as a reliable supplier constituted irreparable injury); *cf. Mutual of Omaha Insurance Co. v. Novak,* 775 F.2d 247, 249 (8th Cir.1985) (court affirmed finding of irreparable injury based on injury to business reputation and good will arising from alleged trademark infringement). It is very difficult to accurately access these types of damage for purposes of monetary recovery. In addition, it is doubtful that the defendant would be subject to suit for the actions alleged here. *See* 28 U.S.C. § 2680 (1982). "The possibility that adequate compensatory or other corrective relief will be available at a later date ... weighs heavily against a claim of irreparable harm." *National Corn Growers Association v. Baker,* 9 CIT —, 623 F.Supp. 1262, 1275 (1985) (quoting *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974), quoting *Virginia Petroleum Jobbers Association v. FPC,* 259 F.2d 921, 925 (D.C.Cir. 1958)). Inasmuch as plaintiff has offered substantial evidence on this point and defendant has offered no evidence to the contrary, the court concludes that plaintiff has suffered and will continue to suffer irreparable harm if its immediate delivery privileges are further discontinued.

The second element of the test of whether a preliminary injunction is warranted is an examination of whether plaintiff is likely to succeed on the merits of the case. The court notes that the likelihood of success need not be shown to be a "mathematical probability." *Azurin,* 10 CIT at —, 632 F.Supp. at 32 (quoting *American Institute for Imported Steel, Inc. v. United States,* 8 CIT —, 600 F.Supp. 204, 209 (1984), citing *Committee to Preserve American Color Television v. United States,* 4 CIT 202, 204, 551 F.Supp. 1142, 1144 (1982)).

The regulation in question, 19 C.F.R. § 142.25(a), allows the district director of customs to revoke an importer's immediate delivery privileges under certain circumstances.[5] Defendant argues that this section applies to brokers, as well, and the court agrees. Inasmuch as brokers may obtain special permits under regulations allowing "importers" to be granted immediate delivery privileges, Customs' argument that the discontinuance provisions of section 142.25 also applies to brokers is entirely reasonable.[6] The question then arises as

---

**5.** 19 C.F.R. § 142.25(a) (1985) reads as follows:

**§ 142.25 Discontinuance of immediate delivery privileges.**

(a) *Authority of district director.* The district director may discontinue immediate delivery privileges if the importer:

(1) Has failed repeatedly to file the applicable Customs documentation set forth in § 142.22(b) timely without justification, or

(2) Has not taken prompt action to settle a claim for liquidation damages issued under § 142.27 for failure to file the applicable Customs documentation set forth in § 142.22(b) timely. "Prompt action" means that the importer, within the time specified in a claim for liquidated damages shall petition for relief or pay the amount claimed and, file the applicable documentation and deposit estimated duties, if any.

(3) Has repeatedly delivered documentation required by § 142.22(b) which is incomplete or which contains erroneous information.

**6.** Plaintiff has directed the court's attention to 19 C.F.R. § 142.25(c), which uses the term "brokers" with regard to discontinuance of immediate delivery privileges. This provision reads as follows:

(c) *Brokers; restriction.* A broker shall not circumvent an action taken under this section by applying for the immediate release of the importer's merchandise in the broker's name and under the broker's bond.

The existence of this provision does not preclude the inclusion of brokers within the term "importers" as used in § 142.25(a), however. Instead, the regulation appears to be addressing

to whether section 142.25 applies to the denial of a broker's ability to use a separate importer of record's immediate delivery privileges where that importer is the principal in the transaction, assuming other requirements, such as the proper power of attorney, are met. The answer to this question does not appear on the face of section 142.25. In addition, there is the issue of whether either penalty was imposed according to the proper procedures.

In assessing whether procedural due process was accorded to plaintiff, the case of *Gallagher & Ascher Company v. Simon,* 687 F.2d 1067 (7th Cir.1982), is instructive. In that case, a limited suspension of the immediate delivery privileges of a broker for failure to make timely entries was upheld, but the broker in *Gallagher,* unlike plaintiff here, remained free to use the importer's/principal's privileges. The Seventh Circuit found that 5 U.S.C. § 558(c)[7] was applicable in that the permit granting immediate delivery privileges was a form of license.[8] The court held that a full adjudicatory hearing was not required under section 558(c) and need only be provided when another statute requires a hearing. *Id.* at 1074. The court observed, however, that section 558(c) allows a "second chance" to be provided the offending party. *Id.* at 1074, 1075. Under section 558(c) a written warning with opportunity to demonstrate compliance or to amend conduct

accords a broker a second chance before discontinuance of its immediate delivery privileges. In this case, unlike the *Gallagher* case, ACB did not receive the formal warning contemplated by section 558(c). Defendant argues that plaintiff was warned when the two automobiles were seized approximately one year ago and when, subsequently, plaintiff received written notice that an audit was to be commenced. The audit letter, however, mentioned no allegations of wrongdoing and no specific adverse action by the agency was mentioned. This would appear inadequate to satisfy section 558(c).

Nonetheless, the second chance opportunity of section 558(c) may be omitted if plaintiff's conduct is willful or if public health and safety so requires. 5 U.S.C. § 558 (1982) (*see supra* note 7). Plaintiff contends, and it does not appear to be disputed, that thus far plaintiff's actions have not aided any evasion of health and safety laws. Furthermore, defendant has not alleged any facts which would demonstrate any likelihood that plaintiff's conduct even threatens noncompliance with emissions standards or otherwise endangers health or safety. If such a likelihood existed, plaintiff's rights to section 558(c) notice and opportunity to comply might be precluded. Whether plaintiff's errors over the past year were willful appears to be a genuinely disputed issue.[9] The parties

the two different roles a broker can play in import transactions, i.e., the broker can act as an agent for another party who is the importer of record or the broker can itself be the importer of record. The broker cannot move into the latter category merely for the purpose of assisting an importer to avoid the penalties imposed under § 142.25.

7. 5 U.S.C. § 558 (1982) reads in pertinent part as follows:

**§ 558 Imposition of sanctions; determination of applications for licenses; suspension, revocation, and expiration of licenses.**

(c) When application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with section 556 and 557 of this title or other proceedings required by law and

shall make its decision. Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—

(1) notice by the agency in writing of the facts or conduct which may warrant the action; and

(2) opportunity to demonstrate or achieve compliance with all lawful requirements.

8. Although defendant does not concede this point, it did not substantially brief the issue, and the court finds no reason to disagree with the Seventh Circuit on this point.

9. Plaintiff disputes that its omissions and misstatements were intentional or were made in careless disregard of statutory requirements.

have not briefed the issue of the standard of review applicable to a determination of willfulness. Of course, plaintiff has no fair chance of demonstrating even arbitrary action, unless it is advised of the facts surrounding the revocation. The record is somewhat unclear as to the extent and timing of information provided, but plaintiff has indicated that it only received a list of the nonconforming numbers on the day before oral argument. Unless the charge of willfulness cannot reasonably be disputed, the statutory scheme requires defendant, at some time close to the time of revocation, to advise plaintiff of the basis of the willfulness claim, in sufficient detail for plaintiff to confront it.

The question remaining unanswered is whether the prohibition of use of importers' privileges by the broker here is unwarranted under the very terms of 19 C.F.R. § 142.25. The court acknowledges the principle "that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence.'" *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (quoting *American Power & Light Co. v. Securities & Exchange Commission,* 329 U.S. 90, 112, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946) (quoting *Phelps Dodge Corp. v. Labor Board,* 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed.

1271 (1941))). Such deference is not warranted, however, if the remedy chosen is "unwarranted in law or ... without justification in fact." *Butz,* 411 U.S. at 185–86, 93 S.Ct. at 1457–58 (quoting *American Power,* 329 U.S. at 112–13, 67 S.Ct. at 145–46). The court does not rule out the possibility that in some cases failure to limit the broker's use of others' immediate delivery privileges would risk substantial harm or would controvert the intendment of section 142.25, but no such examples have been given. It is somewhat difficult to uphold an agency's interpretation of its own regulation which at first glance seems contrary to the language of the regulation and which has not been supported by any substantial arguments concerning the needs of the agency or public policy. The court need not decide this issue nor the issue of whether the agency's conduct was within constitutional bounds [10] inasmuch as Customs apparently has failed to comply with section 558(c). Thus, the court finds a sufficient likelihood of success in establishing lack of statutory due process in discontinuing ACB's privileges.

In determining whether the public interest lies in favor or against the granting of the preliminary injunction, the court must weigh the public interest in due process against the potential harm to the public of allowing plaintiff to continue to enter merchandise using its immediate delivery privileges. Clearly, the public has a strong interest in ensuring that the constitutional

Defendant contends that it had sufficient facts upon which to base a finding of willfulness, citing *Goodman v. Benson,* 286 F.2d 896 (7th Cir.1961). The court finds *Goodman* distinguishable. The court in *Goodman* observed that petitioner Goodman had been informed by his attorney that the limit on rye futures was 500,-000 bushels, and had been rebuked by the Commodity Exchange Authority for exceeding the limit. Some time later, but apparently without any change in circumstances, Goodman again exceeded the limit. From these facts, and after affording plaintiff a full opportunity to show that the agency acted unreasonably, the court found that plaintiff knew the correct limit and had "willfully" failed to comply with it. First, plaintiff has not had an opportunity to make its case here, largely because defendant has been reluctant to provide plaintiff with detailed infor-

mation. Second, although defendant argues that one of plaintiff's employees allegedly admitted to knowingly filing entry papers containing incorrect information, this person is no longer employed by ACB. Thus, it is possible that plaintiff had thought that it had eliminated the source of previous problems.

**10.** In finding no need for a formal hearing the *Gallagher* court observed, citing *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), that the various interests of the parties must be balanced in deciding if the procedures used were sufficient to provide procedural due process. The penalties imposed here were broader than those imposed in *Gallagher.* They are also narrower than the penalties allowed by 19 U.S.C. § 1641 (1982 & Supp. II 1984), which requires notice and a formal hearing.

and statutory or regulatory procedural due process is provided prior to discontinuance of a customhouse broker's privileges. On the other hand, it has not been demonstrated that deprivation of the privileges will have a significant positive impact on the public welfare. As discussed above, defendant has not demonstrated any likelihood that plaintiff's failure to accurately report the importers' tax or social security numbers has resulted, or will result, in the release (or increased threat of release) of automobiles into the country that fail to meet motor vehicle safety and emission standards. Therefore, the action chosen by Customs, that is, revoking all immediate delivery privileges, results in a basically punitive sanction which will not remedy any immediate harm to the public. While the court does not question the importance of accurate reporting of information on Customs entry documents for many purposes, the public interest in due process outweighs the need to impose immediate sanctions in this case.

Finally, the court must consider whether the balance of the hardships on the parties favors issuance of the injunction. Defendant has not proffered any scenario under which the temporary restoration of plaintiff's immediate delivery privileges will result in hardship to Customs. While the court recognizes that inaccurate information provided to Customs eventually may impair the efficiency of the agency in processing the entries and undertaking its enforcement efforts, defendant could not identify any instances in which the incorrect numbers provided by plaintiff resulted in an inability to ensure that the automobiles in question were properly converted to meet U.S. standards or caused any serious and immediate record keeping problems. In addition, at oral argument defendant acknowledged that in the past few weeks plaintiff's compliance with the regulations has improved considerably. On the other hand, the court has already noted the cognizable irreparable injury that will result to plaintiff if the privileges continue to be revoked. The court concludes that any minor administrative difficulties experienced by defendant are outweighed by the irreparable injury that would result to plaintiff.

Having considered the four criteria for issuance of a preliminary injunction, the court concludes that all four factors favor plaintiff's position that such should be granted. SO ORDERED.