**The ALGOMA STEEL CORP., LTD., and Christianson Pipe, Ltd., Plaintiffs,**

**and**

**Ipsco, Inc., and Ipsco Steel, Inc., Plaintiff–Intervenors,**

**v.**

**The UNITED STATES and International Trade Commission, Defendants,**

**and**

**Lone Star Steel Corporation, Maverick Tube Corporation, and Sawhill Tube Division, Cyclops Corp., Defendant–Intervenors.**

Court No. 86–07–00839.

United States Court of International Trade.

Sept. 6, 1988.

Dow, Lohnes & Albertson, William Silverman, Leslie H. Wiesenfelder, and Michael P. House, Washington, D.C., for plaintiffs.

Barnes, Richardson & Colburn, Rufus E. Jarman, Jr., New York City, Matthew J. Clark, Karin M. Burke, New York City, for plaintiff-intervenors.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, and Paul R. Bardos, U.S. Intern. Trade Com'n, Washington, D.C., for defendant Intern. Trade Com'n.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Platte B. Moring, III, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant U.S.

Dewey, Ballantine, Bushby, Palmer & Wood, Michael H. Stein, Washington, D.C., for defendant-intervenor Lone Star Steel Co.

## OPINION AND ORDER

RESTANI, Judge:

This matter is before the court on plaintiff Algoma Steel's motion for an injunction of liquidation pending appeal of the judgment of this court sustaining the determination of the International Trade Commission of likelihood of material injury to a domestic industry by reason of import of goods manufactured by plaintiff. All parties agree that the authority for any such injunction is 19 U.S.C. § 1516a(c) (1982). No party contends that the court should not hear this motion because of the pendency of the appeal but rather they appear to agree that, as is the case of any ordinary stay pending appeal, this court should hear the motion in the first instance. *See* Fed. R.App.P. 8(a).

■ As to entries made prior to May 31, 1987, the termination date of the first annual review period, the court denies plaintiff's motion. At any time during the pendency of the litigation before this court plaintiff might have asked for relief under section 1516a(c); it did not do so. Defendant United States has already issued liquidation instructions with respect to such entries, thus, any action by the court at this time will disturb to some degree the status quo as to such entries. Although liquidation may be said to be a greater disruption of the status quo, in this case the court deems it in the public interest to allow the continuation of the orderly processing of such past entries. Plaintiff concedes that it made a considered choice not to seek a injunction as to the first review period, thereby substantiating defendant's contention that no irreparable harm has been shown with respect to liquidation of the first set of entries.

■ The real debate in this action is whether the court should grant any injunctive relief as to the second set of entries which occurred between June 1, 1987 and May 31, 1988.[1] Plaintiff delayed almost two months in requesting injunctive relief. This is not a particularly long delay and defendants did not argue that they suffered any prejudice because of the delay. No action was taken during the two month period to effect liquidation. Accordingly, no problem of laches has arisen.

■ The standard for granting injunctive relief in this case would seem to be the ordinary four part test.[2] Beginning with the balance of hardships, defendants have not claimed any particular hardships would be caused by the injunction. Duty deposits have been made. If defendants successfully defend the appeal, the injunction will be dissolved without injury to anyone. Given that the balance of hardships is entirely with plaintiff its burdens are somewhat lessened as to the other factors.

Contrary to defendant intervenor's assertion, the court does not find plaintiff's contentions on the merits frivolous. The court obviously disagrees with plaintiff's view of the merits, *see Algoma Steel Corp. v. United States*, 12 CIT ——, 688 F.Supp. 639 (1988), *appeal docketed* No. 88–1491 (Fed.Cir. Jul. 7, 1988), but this is not a reason not to grant a stay pending appeal. *See American Grape Growers Alliance for Fair Trade v. United States*, 9 CIT 505, 507 (1985).

Next, the court will address the question of irreparable harm. Where the court has found a threat of mootness of the litigation and resultant waste of resources, the courts have not required proof of extraordinary financial harm as a prerequisite for an injunction. *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed.Cir. 1983); *Oki Electric Indus. Co. v. United States*, 11 CIT ——, 669 F.Supp. 480 (1987); *Ipsco, Inc. v. United States*, 12 CIT ——, 692 F.Supp. 1368 (1988).[3]

The court agrees with defendants that mootness does not appear to be a significant issue here, but certain of defendants' arguments about review of Commerce Department determinations are relevant, for they are tangentially related[4] and they reveal a troubled path of reasoning. Defendant United States argues that the potential for mootness of an action challenging an original determination, necessitating an injunction of liquidation under *Ipsco* reasoning, will occur only where plaintiff challenges the amount rather than the existence of duties. First, it is often unclear in a challenge to a dumping or subsidy finding what the effect of the challenge might be, that is, whether the challenge is simply

---

**1.** It is the United States rather than the Commission which would be enjoined but, contrary to the contention of the United States, the United States is a named party.

**2.** The court will apply the test in a sliding scale manner. *See American Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 299, 515 F.Supp. 47, 53 (1981).

**3.** It was the potential for mootness, rather than its actuality, together with a variety of other factors which led in part to the *Zenith, Oki* and *Ipsco* decisions.

**4.** Plaintiff relies on *Oki* and *Ipsco*, which concern review of Commerce determinations; defendants argue they are incorrect.

to the amount of duties or whether exclusion may be warranted. Second, reliance solely on such a distinction would cause the granting of injunctions for minor governmental errors, but could allow major errors to injure plaintiffs. Third, although the court noted this distinction among types of challenges in another context in *Fabricas El Carmen, S.A. v. United States*, 12 CIT ——, 680 F.Supp. 1577 (1988) and *Agrexco Agricultural Export Company, Ltd. v. United States*, 80–10–01578, (CIT June 22, 1988) (Memorandum Opinion) this distinction was not recognized by the United States. Rather, the thrust of its argument was that annual review determinations prevent original determinations from having any affect. *See* Government's briefs opposing injunction in *Ipsco* and seeking dismissal in *Fabricas* and *Agrexco*. The court is not prepared to resolve all of the issues which arise out of these concerns in the context of a case involving a Commission determination, but it does appear that annual reviews to establish new rates of duties would not present a threat of mootness to this litigation.

From its view of the broader statutory scheme referred to above, the United States draws an argument that the proper way to obtain a "suspension" of liquidation and the greatest opportunity for relief as to past entries would be for a party such as plaintiff to have filed a request for an annual review. That would mean that any importer or producer who wished to challenge only the Commission's injury determination and prevent liquidation of its entries pending resolution of the dispute should put the Commerce Department to the time and expense of a frivolous annual review proceeding. Congress' intent to prevent unnecessary annual reviews was a factor in granting of the injunction in *Ipsco*, and this factor affects both the analysis of whether irreparable injury exists and the question of the public interest here, as well.[5]

The United States also argues that the court ignores or rewrites 19 C.F.R. § 353.53a (1987) which provides for liquidation in accordance with the deposit rate in effect at the time of entry if no annual review is requested. On the other hand, at times defendant seemed to contend that the regulation does not apply fully if a court decision results in revocation of the order requiring the deposits. As the court in *Oki* and *Ipsco* held, 19 C.F.R. § 353.53a does not appear to apply in its literal terms to every case. If it did, it likely would be in conflict with the statute. All of this leads to the conclusion that the Government's view of the effects of 19 U.S.C. § 1516a(c) and its own regulation is flawed by inconsistency.

Apart from the mootness factor, which appears to be missing here, and the goal of conserving judicial and administrative resources, which may be present, plaintiff might also meet part of its burden by demonstrating unusual financial harm. In this case, pursuant to section 1516a(c), if injunction of liquidation is not granted plaintiffs' goods will likely be subjected to millions of dollars in duties even if it succeeds on appeal. Inability to obtain any monetary relief with regard to liquidated entries involving such substantial amounts weighs in favor of granting the injunction. *See National Juice Products Ass'n. v. United States*, 10 CIT ——, 628 F.Supp. 978, 984 (1986); *American Customs Brokers Co. v. U.S. Customs Service*, 10 CIT ——, 637 F.Supp. 218, 220 (1986) (both finding that the lack of ability to obtain relief in a court of law for economic harm suffered may constitute irreparable harm). The problem with plaintiff's argument in this regard is that it is plaintiff's subsidiary, not a party, which will pay the duties. Plaintiff made no attempt to relate the duties to its own economic harm. The court may assume some unrecoverable financial harm, but the degree is uncertain.

Defendants' key argument in this case is the public interest, as reflected in the statutory scheme. They argue that the intent of Congress is to deny injunctive relief unless

---

**5.** Defendant has not been clear as to the circumstances in which a court decision requiring a negative ITC finding will affect past entries, without a court injunction relating to the injury finding.

plaintiff can show harm *beyond* the unrecoverable loss of substantial amounts of money. They argue further that domestic parties have a very difficult time obtaining injunctions when Commission determinations are challenged because harm through liquidation of competitor's entries at duty rates lower than those sought by the domestic interest is difficult to prove.[6] Thus, they seem to argue that manufacturers or importers should be required to show something approaching economic death before an injunction is granted.

Defendants cite the legislative history of the Trade Agreements Act of 1979 which states that injunctive relief is "truly an extraordinary measure." S.Rep. 249, 96th Cong., 1st Sess. 253 (1979), U.S.Code Cong. & Admin.News 1979, 381, 639. This statement is made in the context of a provision which is intended to broaden the rights of domestic parties. *Id.* at 252, U.S.Code Cong. & Admin.News 1979, at 638. As Congress saw it, under the law prior to the Trade Agreements Act "an importer is entitled to appeal every entry. If he is ultimately successful, his money will be refunded. Thus, although the proceedings are lengthy, he can still obtain complete relief." H.R.Rep. 317, 96th Cong., 1st Sess. 182 (1979). Domestic parties, on the other hand, had more limited rights of appeal and could only seek prospective relief. Specifically, Congress noted that "even if the Court finds that the ITC erred in not finding injury, all entries made between the date of withholding of appraisement and the date of the Court order will escape assessment of dumping duties. The bill would provide the Court with discretionary authority to avoid this result where appropriate." *Id.* *See* S.Rep. 249, at 252, U.S. Code Cong. & Admin.News 1979, at 638.

In providing for such relief, however, Congress expressed its concern regarding the "commercial uncertainty relating to the suspension of liquidation" and, accordingly, indicated that such relief "is truly an extraordinary measure." *Id.* at 253, U.S. Code Cong. & Admin.News 1979, at 639.[7]

The fact that Congress set out "to remedy a disparity in the present law between the relief offered to importers and domestic manufacturers," H.R.Rep. 317, at 182, does not manifest an intention that the Trade Agreements Act affect all interests identically. Though Congress may have done its best to equalize the rights of various interests, trade disputes affect different interests differently. That is their nature. When a party is able to demonstrate sufficient harm it may obtain relief whether it is an importer or a domestic interest, but the type of harm required to be demonstrated may be different. Furthermore, it is apparent that the 1984 legislation making annual reviews optional and the increasing complication of litigation, which may take more than one calendar year to resolve, has led to harmful situations which Congress did not foresee at the time of the 1979 Act. The 1979 legislative history may not pertain to such situations.

It seems clear that jurisdiction to grant the injunction is not absent. The question is what is plaintiff's burden. This case differs from *Ipsco* on several bases, some or all of which may be relevant, including: (1) injunction pending appeal, rather than a preliminary injunction is sought; (2) no serious mootness question exists; (3) the actual importer, the one paying the duties, is not a party[8]; and (4) even though Algoma is a party to the related case challenging

---

**6.** Injunctions are virtually automatic if a party, either foreign or domestic, seeks an injunction in the context of a challenge to an annual review determination.

**7.** The concern for suspension (note the reference is not to injunction) of liquidation probably relates in part to the disfavor in the relevant international agreements of suspension of liquidation *absent* final affirmative findings. *See* discussion in *United States Steel Corp. v. United States,* 9 CIT 333, 614 F.Supp. 1241 (1985) and

*Lone Star Steel Co. v. United States,* 10 CIT ——, 649 F.Supp. 75 (1986). In this case liquidation was suspended past the preliminary Commerce determination because of the final affirmative decisions of both agencies.

**8.** Plaintiffs in *Ipsco* were the manufacturer and a related importer. Some of the entries as to which liquidation was enjoined may not have been made by the party importer. This issue was not raised.

Commerce's findings, this is a challenge to a Commission determination.

Obviously, the question of harm through irremediable liquidation of entries concerned the court in *Fundicao Tupy S.A. v. United States*, 12 CIT ——, Slip Op. 88–32 (March 16, 1988) [available on WESTLAW, 1988 WL 24558] or presumably the court would not have granted injunctive relief pending appeal of the merits after originally denying section 1516a(c) relief. *See Fundicao Tupy, S.A. v. United States*, 11 CIT ——, 669 F.Supp. 437 (1987), *appeal dismissed as moot*, 841 F.2d 1101 (Fed.Cir. 1988).[9] Here, plaintiff has shown the potential for unrecoverable financial loss if relief is denied, but not grave economic harm, a clear balance of hardships in its favor and no public interest reason for completely denying injunctive relief. Obviously, the question of when section 1516a(c) injunctions should be granted is one that has resulted in decisions which are difficult to reconcile. As *Zenith* plays such a large part in the relevant analysis, ultimate resolution by the Court of Appeals of the meaning of 19 U.S.C. § 1516a(c) is desirable. It is also apparent that this court will revisit these issues shortly in other cases. The reduced timetable for briefing in this case, and the fact that plaintiff has already lost its case on the merits before the Commission and this court, indicates this is not an appropriate vehicle for resolving important issues involving section 1516a(c).

The court believes it has equitable power to fashion a stay pending appeal which is narrower than that specified in section 1516a(c) and that has fewer repercussions. The court takes some guidance here from the *Zenith* case, particularly the concurring opinion. "A very strong showing of public interest in preservation of the status quo, for example, may shore up a minimal showing of direct personal injury to the litigant." *Zenith*, 710 F.2d 806, 812 (Nies, J., concurring). Given that appeal is now pending, the court will grant the narrowest relief necessary to preserve the status quo. In order to preserve the status quo with regard to the second set of entries, the court will not grant an "injunction of liquidation" within the meaning of 19 U.S.C. § 1516a(c), but will enjoin the United States from issuing liquidation instructions to the Customs Service with regard to the second set of entries only. If plaintiff succeeds in its appeal, it may pursue whatever remedies remain under 19 U.S.C. § 1516a(c).

As to the second set of entries, the court orders that Commerce delay its liquidation instructions to the Customs Service until the appeal is resolved. Uncertainty will last only as long as it takes to resolve the appeal or resolve the section 1516a(c) question if appeal is successful. The status quo will be preserved. Thus, the court denies plaintiff's request in the entirety as to the first set of entries and grants a limited stay pending appeal as to the second set.

SO ORDERED.

---

**9.** Deprivation of the benefits of judicial review intended to ensure compliance with congressional intent was also the concern in *Zenith*. Contrary to defendants' argument, *Zenith* goes beyond the mootness issue. It is concerned with proper enforcement of the statute enacted by Congress. The emphasis on mootness is derived from later cases attempting to explain *Zenith* or distinguish it.