**THE PILLSBURY COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. 98–109.**
**Court No. 93–03–00161.**

United States Court of
International Trade.

July 29, 1998.

Neville, Peterson & Williams (John M. Peterson and George W. Thompson ), New York City, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (G. Michael Harvey ), of counsel, Susan Flood, Assistant Regional Counsel, U.S. Customs Service, Washington, DC, for Defendant.

## OPINION

MUSGRAVE, Judge.

This action is before the Court on cross motions for summary judgment. Plaintiff, The Pillsbury Company ("Pillsbury"), contests the revocation by defendant, United States Customs Service ("Customs"), of its authority to file claims for manufacturing and same condition drawback using the "Exporter's Summary Procedure" ("ESP"). Pillsbury also contests Customs' revocation of a "blanket waiver" of pre-export notification requirements.

### Background

Pillsbury is a United States corporation that produces, manufactures, imports and exports a wide range of fresh, frozen and processed food products. In the course of its import-export business, Pillsbury claims direct identification and substitution drawback on various products. "Drawback" is the re-

fund or remission of customs duties paid on goods imported into the United States and used in the manufacture or production of goods which are then exported, or used in exchange for imported merchandise of the same kind or quality. 19 U.S.C. § 1313 (1988); 19 C.F.R. § 191 (1993). Pillsbury requested, and, by letter dated March 22, 1985, received, permission from Customs to file claims for manufacturing and same condition drawback using the expedited procedure known as the "Exporter's Summary Procedure," which allows an eligible drawback claimant to combine multiple shipments on a single drawback claim. 19 C.F.R. § 191.53 (1993). Pillsbury secured another tool for improving efficiency in its drawback procedures when it received, also by letter on March 22, 1985, a "blanket waiver" of the regulatory requirement that it furnish Customs with a five working days' advance notice of the exportation of goods that will be the subject of a same condition drawback claim. *See* 19 C.F.R. § 191.141(b)(2)(ii) (1993).

By letter dated November 3, 1992, Customs revoked Pillsbury's ESP authority and blanket waiver. The letter informed Pillsbury that its ESP and waiver privileges had been revoked effective September 15, 1992, and that it would be required to submit notice of intent to claim drawback five days prior to the exportation of drawback-eligible goods, effectively revoking its blanket waiver as well. The letter stated that the revocation was solely due to an on-going investigation of the company and that Pillsbury could not reapply for ESP authority until completion of the investigation. Pillsbury filed an administrative appeal and, upon Customs' denial of that appeal, commenced the instant action on March 16, 1993.

In addition to filing a summons and complaint, Pillsbury filed a motion for a preliminary injunction to enjoin Customs from revoking Pillsbury's ESP authority and blanket waiver during the pendency of the action. Before the Court acted upon this motion, Customs sent another letter to Pillsbury altering the original revocation letter. On April 2, 1993, Customs wrote Pillsbury that its ESP authorization and blanket waiver would be restored for all products other than fresh asparagus, but that the revocation would be converted to a suspension to remain in effect until July 1, 1993. This Court acted upon Pillsbury's motion on May 4, 1993, issuing an Order that established expedited pre-exportation procedures for Customs to inspect Pillsbury's exports including asparagus. This Order prevented Customs from effecting its November 3, 1993 letter purporting to revoke Pillsbury's ESP authority and blanket waiver.

On September 28, 1993, Customs issued another letter, without leave of the Court, revoking Pillsbury's ESP authority and blanket waiver, but only as to exports of fresh asparagus. Customs asserted in this letter that Pillsbury's drawback claims as to asparagus would be invalid due to a lack of fungibility between Pillsbury's exported asparagus and asparagus which Pillsbury had previously imported from Mexico.

In light of Customs' attempts at another revocation, this Court heard arguments from the parties on enjoining Customs' latest actions and issued a second Order on November 10, 1993. The Order confirmed the procedures established by the May 4, 1993 Order and extended them to include drawback claims on exports of fresh asparagus up to and including September 28, 1993. *Pillsbury Co. v. United States,* 17 CIT 1195 (1993). This Court did not rule on the question of the fungibility of Pillsbury's asparagus imports and exports, nor was there a decision on the merits of Pillsbury's drawback claims for the periods during which Customs prevented Pillsbury's use of ESP. *Id.* at 1197.

This Court's May 4, 1993, and November 10, 1993, Orders mooted Pillsbury's drawback claims as to exports made after their issuance. There remains, however, a contested issue between the parties as to the export of fresh asparagus during the time between Customs' November 3, 1992 letter and the Court's May 4, 1993 Order (hereinafter the "gap period"). Customs refuses to grant drawback on Pillsbury's asparagus exports for the gap period on the grounds that Pillsbury did not provide Customs with five days' pre-export notification. Pillsbury sub-

mitted the summary judgment motion now before the Court in an effort to have the November 3, 1992 revocation declared void *ab initio* and proceed to trial on the merits of its drawback claims for asparagus exports during the gap period. Customs contests Pillsbury's motion with a request for summary judgment seeking to uphold its actions and dismiss Pillsbury's claims.

### Standard of Review

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(i)(4) (1988). By statute, the Court must set aside actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)–(D) (1988). The Court must also strike down agency action which is contrary to constitutional, statutory, or procedural requirements. 28 U.S.C. § 2640(e) (1988).

Both parties have moved for summary judgment. Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." USCIT R. 56(d); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court finds that there are no genuine issues of material fact and that it has the power to render summary judgment.

### Discussion

The sole issue before the Court is whether Customs' revocation of Pillsbury's ESP authority and blanket waiver was valid. Pillsbury argues that Customs' revocation violated the Administrative Procedure Act ("APA"), Customs' own binding rules, and Pillsbury's constitutional due process guarantees. Pillsbury calls upon the Court to reiterate a conclusion contained in its previous Order: that Customs' revocation did not provide Pillsbury with adequate notice nor was it predicated on a charge which Pillsbury could rebut in a meaningful way. *Pillsbury,* 17 CIT at 1196 n. 2. The Court agrees with Pillsbury that Customs' actions were arbitrary and capricious, and holds Customs' revocation to be void *ab initio.*

Customs granted Pillsbury ESP and blanket waiver authority in its 1985 letter pursuant to valid Customs regulations. Pillsbury argues that in bestowing these privileges, Customs granted Pillsbury licenses as defined, and protected, by the APA. The APA sets forth the definition of "license" and establishes the parameters within which an agency may grant and revoke licenses. The APA defines "license" as "an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8) (1988). Courts have found that the APA provides a very broad definition of "license" and have extended APA protection to several privileges highly analogous to those granted Pillsbury. *Atlantic Richfield Co. v. United States,* 774 F.2d 1193, 1199–1202 (D.C.Cir. 1985) (Maritime Administration approvals for conditional entry in Alaskan–Panama Canal domestic oil trade held to be APA-protected licenses); *Gallagher & Ascher Co. v. Simon,* 687 F.2d 1067, 1072–76 (7th Cir.1982) (permits issued pursuant to Customs regulations allowing for expedited entry of certain imports constituted licenses under the APA); *American Customs Brokers Co. v. United States,* 10 CIT 385, 637 F.Supp. 218 (1986) (immediate delivery privileges found to be a license under the APA). The Court finds that Pillsbury's ESP authority and waiver privileges constituted a license within the protections of the APA.

Customs argues that ESP authority and waiver privileges cannot be licenses because to cloak these in the protection of the APA would be to deprive Customs of its right to examine goods for export in an effort to discover and prevent fraud. Customs suspected that Pillsbury was filing fraudulent drawback claims on exports of asparagus; thus the cryptic phrase in Customs' November 3, 1992 letter to Pillsbury that its privileges were being revoked due to an on-going investigation. Customs asserts that it has a plenary right to inspect all exports and that if ESP authority, and more particularly the ability to waive pre-export notification pursuant to the duly granted blanket waiver, are considered licenses then suspect goods can be removed from Customs territory before an investigation could be effected.

Customs' argument is inapposite. The policy concern Customs puts forth is irrelevant to the question of whether the ESP authority and blanket waiver privileges are licenses for APA purposes. Customs was never dispossessed of the opportunity to deny any of Pillsbury's drawback claims on the merits.[1] Additionally, Customs, in the 1985 letter granting Pillsbury ESP authority and waiver privileges, explicitly reserved to itself the right to inspect Pillsbury's merchandise at the discretion of the District Director. The waiver privilege only applies to the notice Pillsbury must provide to Customs and in no way interfered with Customs' ability to inspect or investigate Pillsbury's exports.

 While the Court agrees that Customs has the right to inspect exports it also has an obligation to operate within statutory mandates. The obligation established by the APA requires Customs to notify an exporter of the reason for revocation of a license and to provide the exporter an opportunity to address that reason. The APA states:

> ... the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given -
>
> (1) notice by the agency in writing of the facts or conduct which may warrant action; and
>
> (2) opportunity to demonstrate or achieve compliance with all lawful requirements.

5 U.S.C. § 558(c). This section affords a party with a "second chance" to address and correct any concerns with the license in question. *American Customs Brokers*, 10 CIT at 388, 637 F.Supp. at 222 (quoting *Gallagher & Ascher Co.*, 687 F.2d at 1074–75). Customs' November 3, 1992 letter was by its terms a revocation of Pillsbury's ESP authority and blanket waiver privileges. The revocation letter itself constituted the first apprisal by Customs to Pillsbury that its privileges were in jeopardy, and this is insufficient notice under the APA. Further, the letter did not identify a means by which Pillsbury would be afforded an opportunity to address or rebut the vaguely stated reason for the revocation, denying Pillsbury the opportunity for the "second chance" that the APA guarantees.

Customs argues that it need not comply with the strictures of § 558(c) if it determines that there has been a willful violation of statutory or regulatory requirements. 5 U.S.C. § 558(c); *Koden v. United States*, 564 F.2d 228, 234 (7th Cir.1977). Customs believed that Pillsbury had intentionally filed inaccurate drawback claims. Customs' revocation was apparently based on that belief, although the revocation letter informed Pillsbury only that there was an "on-going investigation."

 To be exempt from § 558(c) mandates, Customs must show that it made an actual finding of intentional misconduct and that there is no reasonable dispute that intentional misconduct occurred. *Holt Hauling & Warehousing System, Inc. v. United States*, 10 CIT 769, 772, 650 F.Supp. 1013, 1016 (1986) ("Absent a *finding* of willfulness, the licensee is entitled to written notice of the facts warranting" revocation (emphasis added)); *American Customs Brokers Co.*, 10 CIT at 389, 637 F.Supp. at 223 ("Unless the charge of willfulness cannot be reasonably disputed, the statutory scheme requires [Customs], at some time close to the time of revocation, to advise plaintiff of the basis of the willfulness claim, in sufficient detail for plaintiff to confront it"). Customs did neither. The revocation letter did not provide Pillsbury with any details of alleged misconduct, and the fact that no evidence of improper conduct on the part of Pillsbury was at that time or since forthcoming makes it clearly disputable whether intentional misconduct occurred. Since Pillsbury had no opportunity to rebut whatever evidence Customs may have had, Customs cannot claim an exemption from the demands of § 558(c). As Customs met neither of the two requirements under that section, and Customs' actions do not fit within any exception, the

---

**1.** It is still the claimant's responsibility to prove eligibility for drawback, and Pillsbury is seeking nothing more than its day in court to do so. Customs at this stage is proposing arguments which do no more than attempt to deny Pillsbury the opportunity to be heard, and the Court disapproves of that attempt.

Court finds that Customs' attempted revocation violates the APA.

■ Customs' own policy directives with respect to ESP authority set forth the APA-required procedures which Customs should have followed in this case. Customs Directive 3740–007 (April 21, 1992) (hereinafter "Directive") established "uniform national" grounds for revoking a drawback claimant's ESP authorization, and the Directive's requirements mirror those of APA Section 558(c). The Directive first describes potential conditions which could be cause for revocation of ESP authority and, by implication, blanket waiver privileges, then explicitly states what actions Customs must take to effect a revocation of either.

> If it is decided to deny a request for ESP or to revoke ESP privileges, a letter to that effect will be sent to the claimant explaining what corrective action must be taken, *but not disclosing any restricted enforcement information.* [The letter must also include] a time frame in which the applicant/claimant may reapply.

Customs Directive 3740–007 Section 3(c) (emphasis in original). The Directive also authorizes appeal of the denial or revocation decision. Most importantly, the above paragraph mandates that Customs provide a claimant with notice of a revocation decision, sufficient details of the reason for revocation with which to formulate a response, and an opportunity to present that response, just as APA Section 558(c) requires.

■ Customs describes this rule of its own making as a "directive," but this label is "only indicative, and not dispositive, of the agency's intent" to formulate a rule. *Louisiana–Pacific Corp. v. Block,* 694 F.2d 1205, 1210 (9th Cir.1982). The Directive easily falls within the APA's definition of a "rule," which is defined as:

> the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency....

5 U.S.C. § 551(4) (1988). The Directive was issued pursuant to Customs' statutory authority to promulgate rules in furtherance of its authority to grant drawback in the administration of customs laws. 19 U.S.C. § 1313 (1988); *see Chrysler Corp. v. Brown,* 441 U.S. 281, 302–03, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979) (agency regulations are deemed substantive, and thus binding on the agency and parties before it, when issued pursuant to statutory authority and affecting individual rights and obligations). By its own terms, the Directive was designed to "establish uniform national policies and procedures for approving, denying, and revoking Exporter's Summary Procedure (ESP) for manufacturing and same condition drawback claimants." Customs Directive 3740–007. The Court finds that the Directive is indeed a rule affecting individual rights that are protected by procedural safeguards.

Although the Directive is a rule, it does little more than that which is already required by the APA, and Customs did little to satisfy either. The existence of an "on-going investigation" is not one of the reasons listed in the Directive for revocation of ESP authority, but the list is clearly not intended to be exhaustive. Rather, the critical aspect of the Directive is its demand that, in conformity with the APA, certain procedural safeguards be followed in the act of revocation. The Court finds that Customs' failure to abide by both APA Section 558(c) and its own policy mandate—one which is not for the benefit of the administrating district directors but rather intended for the benefit of authorized ESP claimants—was arbitrary and capricious, and therefore void *ab initio.*

Finally, Pillsbury argues that Customs' actions violated Pillsbury's constitutional due process guarantees. In *American Customs Brokers,* the court found that Customs, in revoking plaintiff's license, failed to comply with APA notice and "second chance" requirements, just as Customs has in this case. However, in so finding, the *American Customs Brokers* court also found that it need not reach the constitutional due process question:

> The court need not decide ... whether [Customs'] conduct was within constitutional bounds inasmuch as Customs apparently has failed to comply with section

558(c). Thus, the court finds a sufficient likelihood of success in establishing lack of statutory due process in discontinuing [plaintiff's license].

*American Customs Brokers,* 10 CIT at 390, 637 F.Supp. at 223 (footnote omitted). Thus, this Court does not reach the constitutional due process issue. The Court, like that in the aforementioned case, deems it sufficient to find that Customs has violated the APA and its own rule-established procedural requirements in revoking Pillsbury's license to use ESP and a blanket waiver. The Court notes that this ruling has the sole effect of allowing Pillsbury to move to trial to attempt to demonstrate its eligibility for drawback on asparagus exports during the gap period.

### Conclusion

For the foregoing reasons, the Court finds that Customs' attempted revocation of Pillsbury's ESP authority and blanket waiver privileges is void *ab initio.*

### ORDER

Upon consideration of plaintiff's Motion for Summary Judgment, defendant's Motion for Summary Judgment, and all other papers and proceedings had herein, it is

**ORDERED** that plaintiff's Motion for Summary Judgment be, and hereby is, granted; and it is further

**ORDERED** that defendant's Motion for Summary Judgment be, and hereby is, denied; and it is further

**ORDERED** that the attempted revocation by defendant of plaintiff's Exporter's Summary Procedure authority and blanket waiver privileges is void *ab intio*; and it is further

**ORDERED** that the parties shall enter a scheduling order in this case within thirty (30) days of the issuance of this Order setting trial for determination of whether plaintiff's asparagus exports during the gap period are eligible for the claimed drawback.