**Slip Op. 05-168**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NUCOR CORPORATION, GERDAU AMERISTEEL CORPORATION, and COMMERCIAL METALS COMPANY, | : |
| | : |
| *Plaintiffs*, | : |
| v. | : |
| UNITED STATES, | :  Court No. 05-00616 |
| *Defendant*, | : |
| and | : |
| IÇDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., | : |
| | : |
| *Defendant-Intervenor*. | |

[Plaintiffs' application for preliminary injunction restraining liquidation of future entries of merchandise outside the period of review is denied.]

Dated:  December 30, 2005

Wiley Rein & Fielding LLP (Alan H. Price, John R. Shane, and Maureen E. Thorson), for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); Ada Loo, Office of the Chief Counsel, U.S. Department of Commerce, Of Counsel; for Defendant.

Arnold & Porter LLP (Lawrence A. Schneider), for Defendant-Intervenor.

**OPINION**

RIDGWAY, Judge:

At issue in this action are the final results of the U.S. Department of Commerce's 2003-2004 administrative review of the antidumping order covering certain steel concrete reinforcing bars ("rebar") from Turkey, which resulted in the revocation of the order as to one Turkish rebar producer/exporter – Defendant-Intervenor ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S. ("ICDAS"). *See* Certain Steel Concrete Reinforcing Bars From Turkey; Final Results, Rescission of Antidumping Duty Administrative Review in Part, and Determination To Revoke in Part, 70 Fed. Reg. 67,665 (Nov. 8, 2005) ("Final Results of Turkish Rebar Administrative Review"). Jurisdiction lies under 28 U.S.C. § 1581(c) (2000).[1]

Plaintiffs Nucor Corporation, Gerdau AmeriSteel Corporation, and Commercial Metals Company are domestic producers of rebar ("Domestic Producers"). The Domestic Producers dispute two specific aspects of the final results of the 2003-2004 administrative review. First, they challenge the Commerce Department's "unilateral decision to alter the date of sale for sales made by ICDAS" from the commercial invoice date (used by the agency in its preliminary results) to the contract date (used in the final results). *See* Motion of Plaintiffs Nucor Corporation, Gerdau AmeriSteel Corporation, and Commercial Metals Company for Preliminary Injunction Against Liquidation ("Domestic Producers Brief") at 3, 8; Complaint ¶¶ 6-8. And, second, the Domestic Producers contest the Commerce Department's refusal to treat certain of ICDAS's sales as Constructed Export Price ("CEP") sales, which "would have required Commerce to make additional, statutorily

---

[1]All statutory references herein are to the 2000 edition of the United States Code.

mandated adjustments to the U.S. transaction prices." *See* Domestic Producers Brief at 3-4; Complaint ¶¶ 10-12 (misnumbered as 10). According to the Domestic Producers, the Commerce Department's correction of the two alleged errors would result in the agency's reinstatement of the antidumping order as to ICDAS. *See* Domestic Producers Brief at 4.

Now pending before the Court is the Domestic Producers' Motion For Preliminary Injunction Against Liquidation, which has already been granted in part.[2] With the consent of all parties, a preliminary injunction has previously issued restraining liquidation (pending a final decision in this matter) of rebar produced and/or exported by ICDAS and entered or withdrawn from warehouse for consumption during the relevant period of review ("POR") – *i.e.*, April 1, 2003 through March 31, 2004. *See* Preliminary Injunction Order (Nov. 15, 2005). What remains at issue is the Domestic Producers' request for a prospective injunction restraining liquidation of *future* entries (*i.e.*, "post-POR entries" – entries outside the period of review).

As detailed more fully below, the Domestic Producers have failed to make the showing required to satisfy the classic "four factors" test for injunctive relief. Their application for a prospective preliminary injunction restraining liquidation of future, post-POR entries – relief which would be truly extraordinary – must therefore be denied.

---

[2]"Liquidation" is "the final computation or ascertainment [by the Bureau of Customs and Border Protection] of the duties . . . accruing on an entry." 19 C.F.R. § 159.1 (2005); Juice Farms, Inc. v. United States, 68 F.3d 1344, 1345 (Fed. Cir. 1995).

## I. __Background__

In 1997, the Commerce Department issued an antidumping order on rebar from Turkey. *See* Antidumping Duty Order:  Certain Steel Concrete Reinforcing Bars From Turkey, 62 Fed. Reg. 18,748 (April 17, 1997).  Since that time, the agency has completed a number of administrative reviews (also known as "section 751 reviews" or "annual reviews") of the order, the most recent of which is at issue in this action.[3]

Pursuant to section 751 of the Trade Agreements Act of 1979 (codified at 19 U.S.C. § 1675), the Commerce Department conducts administrative reviews of antidumping orders, upon request, in recognition of the fact that prices and costs change over time and that such changes may necessitate adjustments to antidumping duty rates established in antidumping orders.

The purpose of an administrative review is to determine the duty rates for the specific period of review ("POR").  The final results of the administrative review thus serve as "the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties."  19 U.S.C. § 1675(a)(2)(C).  The duty rates and deposit requirements established in the final results of the administrative review remain in effect until they

---

[3]The 2004-2005 administrative review is ongoing, with preliminary results now due on May 1, 2006.  *See* Certain Steel Concrete Reinforcing Bars From Turkey; Notice of Extension of Time Limits for Preliminary Results in Antidumping Duty Administrative Review, 70 Fed. Reg. 70,785 (Nov. 23, 2005).

The final results of the 2002-2003 administrative review are currently being litigated in Colakoglu Metalurji A.S. v. United States, Court No. 04-00621 (filed Dec. 8, 2004).

are eclipsed by the publication of the final results of the next administrative review.[4] *See generally*

Dofasco Inc. v. United States, 390 F.3d 1370, 1371-72 (Fed. Cir. 2004); Consolidated Bearings Co.

v. United States, 348 F.3d 997, 1000-01 (Fed. Cir. 2003); Fuyao Glass Indus. Group Co. v. United

States, 27 CIT ____, ____, 2003 WL 21780970 ** 2-3 (2003).

If a party seeks judicial review of the results of an administrative review, the Court of

International Trade "may enjoin the liquidation of some or all entries of merchandise covered by [the

administrative review]." 19 U.S.C. § 1561a(c)(2). Preliminary injunctions restraining liquidation

of entries made during the period of review (*i.e.*, "POR entries") are routinely granted with the

consent of all parties in cases – like this one – where the results of an administrative review are

challenged in court. *See* Domestic Producers Brief at 4 ("this court routinely issues injunctions

suspending liquidation in challenges to final determinations under Section 751") (citation omitted);

Response of Defendant-Intervenor ICDAS to Defendant's Motion for Voluntary Remand ("ICDAS

Brief") at 4-5 (referring to "the usual scenario where a preliminary injunction is almost routinely

entered" suspending liquidation of POR entries "pending appeal of a Section 751 determination")

---

[4]As the Commerce Department's regulations explain:

Unlike the systems of some other countries, the United States uses a "retrospective" assessment system under which final liability for antidumping . . . duties is determined after merchandise is imported. *Generally, the amount of duties to be assessed is determined in a review of the order covering a discrete period of time. If a review is not requested, duties are assessed at the rate established in the completed review covering the most recent prior period* or, if no review has been completed, the cash deposit rate applicable at the time merchandise was entered.

19 C.F.R. § 351.212 (2005) (emphasis added).

(citation omitted).[5]   Indeed, such an injunction already has been entered in this action.  *See* Preliminary Injunction Order (Nov. 15, 2005).  As explained in greater detail below (*see* section II.B.1), the purpose of such an injunction is to preserve the court's jurisdiction, so that cases are not mooted by the liquidation of all POR entries during the pendency of litigation.  *See* Zenith Radio Corp. v. United States, 710 F.2d 806 (Fed. Cir. 1983).

However, the Domestic Producers are not content with the scope of the existing preliminary injunction, because it enjoins the liquidation of POR entries only.  The Domestic Producers emphasize that, because the 2003-2004 administrative review was the third review in which ICDAS's dumping margin was zero or *de minimis*, the antidumping order was revoked as to ICDAS as a result of the review.[6]   The Domestic Producers assert that the Commerce Department's

---

[5]*See also* Algoma Steel Corp. v. United States, 12 CIT 802, 806 n.6, 696 F. Supp. 656, 660 n.6 (1988) ("Injunctions are virtually automatic . . . in the context of a challenge to an annual review determination."); SKF USA Inc. v. United States, 28 CIT ____, ____, 316 F. Supp. 2d 1322, 1337 (2004) ("For nearly two decades, since Zenith, parties have sought, Commerce has consented to, and . . . court[s] [have] issued" preliminary injunctions in cases challenging the results of administrative reviews). *Cf*. PAM, S.p.A. v. United States, 28 CIT ____, ____, 347 F. Supp. 2d 1362, 1365 (2004) ("In most countervailing and antidumping duty cases, it is the general practice before this Court that motions for preliminary injunctions come before the court on consent of the parties.").

[6]In its Final Results at issue here, the Commerce Department summarized its policy on revocation of antidumping orders:

The Department may revoke, in whole or in part, an antidumping duty order upon completion of . . . [an administrative review].  While Congress has not specified the procedures that the Department must follow in revoking an order, the Department has developed a procedure for revocation that is described in 19 CFR 351.222.  This regulation requires, inter alia, that a company requesting revocation must submit the following: (1) A certification that the company has sold the subject merchandise at not less than normal value (NV) in the current review period and that the company will not sell subject merchandise at less than NV in the future; (2) a certification that the company sold commercial quantities of the subject merchandise to the United

correction of the errors alleged in the Domestic Producers' Complaint would raise ICDAS's

dumping margin above the *de minimis* level and, thus, result in the reinstatement of the antidumping

order. The Domestic Producers therefore seek to extend the preliminary injunction, to prospectively

restrain the liquidation of future, post-POR entries, pending a final decision in this litigation. *See*

Domestic Producers Brief at 1-5, 9-11; Response of Plaintiffs Nucor Corporation, Gerdau

AmeriSteel Corporation, and Commercial Metals Company Regarding Defendant's Motion for

Voluntary Remand and to Reinstate Suspension of Liquidation ("Domestic Producers Reply Brief")

at 2.

In a teleconference hearing on the Domestic Producers' Motions for Temporary Restraining

Order and Preliminary Injunction Against Liquidation convened on November 15, 2005, both the

Government and ICDAS vigorously opposed the grant of a temporary restraining order or

preliminary injunction restraining the liquidation of future, post-POR entries. The Government and

---

> States in each of the three years forming the basis of the request; and (3) an agreement to immediate reinstatement of the order if the Department concludes that the company, subsequent to the revocation, sold subject merchandise at less than NV.

Final Results of Turkish Rebar Administrative Review, 70 Fed. Reg. at 67,666. As the Commerce Department explained, it concluded that revocation of the antidumping order as to ICDAS was warranted because:

> (1) the company had zero or *de minimis* margins for a period of at least three consecutive years; (2) the company has agreed to immediate reinstatement of the order if the Department finds that it has resumed making sales at less than NV; and (3) the continued application of the order is not otherwise necessary to offset dumping.

*Id*. *See generally* FMC Corp. v. United States, 3 F.3d 424, 426 (1993) (summarizing process of revocation of antidumping order there at issue).

ICDAS maintained that – as a threshold matter – the Court lacks jurisdiction to grant such relief, and, further, that the Domestic Producers have failed to satisfy the classic "four factors" test for injunctive relief.[7] The Domestic Producers' motion for a temporary restraining order was denied as to future, post-POR entries, and a schedule for further briefing and a tentative hearing on the application for a preliminary injunction as to those entries was established. *See* Order (Nov. 15, 2005).

A mere three days later, the Government filed a Motion for a Voluntary Remand on the "date of sale" issue – the first of the two issues raised in the Domestic Producers' Complaint. *See* Defendant's Motion for a Voluntary Remand ("Government Brief"); Complaint ¶¶ 6-8. In its motion, the Government advised that the Commerce Department now "consents to the entry of an injunction ordering the suspension of liquidation upon the entries of the subject merchandise produced and exported by ICDAS entered on or after April 1, 2004" – *i.e.*, a prospective injunction restraining liquidation of future, post-POR entries. *See* Government Brief at 3.

In light of the Government's abrupt change of position on the entry of a prospective injunction, the tentatively-scheduled hearing was canceled, and the parties were relieved of their briefing obligations under the Court's November 15, 2005 Order "except to the extent . . . appropriate, in the context of Defendant's Motion For a Voluntary Remand, to address Plaintiffs' Motions for a Temporary Restraining Order/Preliminary Injunction." *See* Order (Nov. 28, 2005).

The Domestic Producers' subsequent submission – like the Government's Brief – did not

---

[7]*See* ICDAS Brief at 2-3 (noting that, during the November 15 hearing, "both counsel for ICDAS and counsel for the U.S. Government took the position that, among other things, the Court does not have jurisdiction . . . to issue a preliminary injunction against liquidation of entries entered after the review period" at issue).

even mention the jurisdictional issue and, indeed, added relatively little to the substance of the Domestic Producers' opening brief. ICDAS's brief, on the other hand, reiterated its strong opposition to the Domestic Producers' application for prospective relief, both as a matter of jurisdiction and on the merits. *See* Domestic Producers Reply Brief; ICDAS Brief.

The Domestic Producers' request for a preliminary injunction restraining liquidation of future, post-POR entries is now ripe for decision.[8]

## II. Analysis

The Domestic Producers contend that they have satisfied the classic "four factors" test for issuance of an injunction. *See* Domestic Producers Brief at 4, 9; Domestic Producers Reply Brief at 2.[9] ICDAS strenuously disputes that claim and asserts, moreover, that the Court lacks jurisdiction to grant the requested relief. *See* ICDAS Brief, *passim*. As discussed above, the Government has been straddling the fence (first opposing the Domestic Producers' motion, and now consenting to it). *See* Government Brief at 3. Much of its reasoning remains a mystery.

---

[8]The Government's Motion for a Voluntary Remand was granted on December 15, 2005, with the consent of all parties. *See* Order (Dec. 15, 2005); Government Brief at 3 (noting the Domestic Producers' consent to the motion for remand); ICDAS Brief at 1 ("ICDAS does not oppose a voluntary remand . . . for further consideration of the date of sale issue").

[9]The Domestic Producers' opening brief conflates their arguments for an injunction as to liquidation of POR entries with their arguments for an injunction as to liquidation of future, post-POR entries. As discussed below, however, the merits of their request for an injunction as to POR entries are quite different from the merits of the pending application. It is therefore necessary to parse the Domestic Producers' papers, to identify those statements which relate to the matter at hand.

The parties' arguments on both jurisdiction and the merits of the Domestic Producers' application are addressed in turn below.

### A. Jurisdiction to Grant the Requested Prospective Relief

No party disputes that the Court has jurisdiction over this action. Nor does any party dispute the Court's jurisdiction to enter a preliminary injunction prohibiting liquidation of entries made during the POR at issue. Indeed, as discussed above, such an injunction already has been entered, with the consent of all parties. *See* Preliminary Injunction Order (dated Nov. 15, 2005).

The narrow – and apparently novel – question that ICDAS raises as a threshold matter is whether the Court has jurisdiction to enjoin the liquidation of future, post-POR entries. *See generally* ICDAS Brief at 2-5. In other words, ICDAS contends that – even if the Domestic Producers were able to satisfy the "four factors" test for preliminary injunctive relief (spelled out in section II.B, below) – the Court nevertheless could not grant the prospective injunctive relief that the Domestic Producers are now seeking.

ICDAS reasons that the statute invoked by the Domestic Producers refers only to entries "covered by" the agency determination at issue. *See* 19 U.S.C. § 1516a(c)(2) (authorizing court to "enjoin the liquidation of some or all entries of merchandise *covered by* [the agency] determination" at issue in court proceeding). And, according to ICDAS, future entries made outside the POR plainly are not "covered by" the Commerce Department determination contested in this action. *See* ICDAS Brief at 4 (emphasizing that "[c]onspicuously absent from the movants' pleadings is any explanation of how ICDAS' future entries are 'covered' by Commerce's most recent administrative review

determination. . . . [E]ntries made on or after April 1, 2004 are not 'covered,' and an injunction ordering suspension of liquidation cannot be issued under Section 1516a(c)(2).").

ICDAS first advanced its jurisdictional argument in the course of the November 15, 2005 hearing on the Domestic Producers' motions for a temporary restraining order/preliminary injunction. At that time, the Government expressly endorsed – and joined in – ICDAS's jurisdictional challenge. *See* ICDAS Brief at 2-3 (noting that, during the November 15 hearing, "both counsel for ICDAS and counsel for the U.S. Government took the position that, among other things, the Court does not have jurisdiction . . . to issue a preliminary injunction against liquidation of entries entered after the review period" at issue in this action).

Just three days later, however, the Government did an about-face. In the context of seeking a voluntary remand on the so-called "date of sale" issue, the Government advised that the Commerce Department now "consents to the entry of an injunction ordering the suspension of liquidation upon the entries of the subject merchandise produced and exported by ICDAS entered on or after April 1, 2004" – *i.e.*, a *prospective* injunction restraining liquidation of future, post-POR entries. *See* Government Brief at 3. As grounds for its new position on the entry of such an injunction, the Government stated simply that "a change in the date of sale determination would likely result in the reinstatement of the antidumping duty order." *Id*. The Government failed to explain how that fact affects the relevant jurisdiction of the Court. The Government's reasoning on the jurisdictional issue is thus entirely unclear. Indeed, although the Government's newly-granted consent to a prospective injunction implicitly suggests that it now believes that there is no jurisdictional bar to the Court's entry of such an injunction, there is room for at least some doubt as to that matter as well.

The Domestic Producers have been no more forthcoming on the issue of jurisdiction. Their opening brief did not anticipate ICDAS's jurisdictional argument. *See* Domestic Producers Brief. Surprisingly, their reply brief – filed almost a month after the November 15 hearing – is equally silent. *See* Domestic Producers Reply Brief.[10]

ICDAS is thus the only party to have addressed the jurisdictional issue in writing. And even ICDAS's papers raise more questions than they answer. It is noteworthy, for example, that none of the cases cited by ICDAS speaks in terms of jurisdiction. *See*, *e.g.*, Torrington Co. v. United States, 20 CIT 1293 (1996) (denying preliminary injunction restraining liquidation of future entries, based on applicant's failure to establish irreparable harm and likelihood of success on the merits); FMC Corp. v. United States, 16 CIT 378, 792 F. Supp. 1285 (1992) (same), *aff'd on alternative grounds*, 3 F.3d 424 (Fed. Cir. 1993). Moreover, as ICDAS itself candidly acknowledges, the issue that it raises might arguably be deemed a matter of the extent of the Court's equitable powers, rather than a question of its jurisdiction. *See* ICDAS Brief at 8-9.[11]

---

[10]The Domestic Producers' failure to address the jurisdictional issue is particularly difficult to understand, since they bear the burden of establishing both jurisdiction generally and their entitlement to the relief that they seek. *See*, *e.g.*, Pentax Corp. v. Robison, 125 F.3d 1457, 1462 (Fed. Cir. 1997) ("Once jurisdiction is challenged, the plaintiff bears the burden of proving that the court's jurisdiction is invoked properly.") (citation omitted); FMC Corp., 3 F.3d at 427 ("[t]o obtain the extraordinary relief of an injunction prior to trial, the movant carries the burden to establish a right thereto").

[11]To the extent that the phrase "covered by" might be argued to be ambiguous, full briefing on the jurisdictional issue presumably would discuss any legislative history that may be relevant. Similarly, if the issue is indeed jurisdictional (as ICDAS claims), briefing presumably would address the implications, if any, of sovereign immunity for the interpretation of the phrase. *See*, *e.g.*, Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."); Lane v. Pena, 518 U.S. 187, 192 (1996) (waiver of sovereign immunity "must be unequivocally expressed in statutory text" and "will be strictly construed, in terms of its scope, in

In any event, as detailed below, the Domestic Producers have failed to establish that they are otherwise entitled to the prospective preliminary injunction that they seek. There is, therefore, no need to reach ICDAS's jurisdictional argument at this time.

### B.  The Merits of the Domestic Producers' Application

As explained in section I above, preliminary injunctions restraining the liquidation of POR entries are sought and granted almost reflexively in cases (like this one) challenging the outcome of administrative reviews. Preliminary injunctions are nevertheless "extraordinary relief." FMC Corp., 3 F.3d at 427 (citations omitted). To obtain such relief, a movant bears the burden of establishing its right thereto in light of the classic "four factors" test. *Id.* Thus, as the Court of Appeals explained in Zenith, a movant must show:

> (1) that it will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the [movant].

Zenith, 710 F.2d at 809 (citations omitted).[12]

---

favor of the sovereign") (citations omitted). *See also* American Spring Wire Corp. v. United States, 7 CIT 2, 5 n.2, 578 F. Supp. 1405, 1407 n.2 (1984) (stating that "injunctions issued in the section 751 review context are of the All Writs Act type, designed to preserve the reviewing court's jurisdiction, rather than of the rule 65 variety") (citations omitted); Zenith, 710 F.2d at 809 (discussing All Writs Act).

[12]The law on the relative importance of the four factors is somewhat unsettled. In FMC Corp., for example, the Court of Appeals wrote:

> *No one factor*, *taken individually*, *is necessarily dispositive*. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, *the absence of an adequate showing with regard to any one factor may be sufficient*,

1. Irreparable Harm

The threat of immediate, irreparable harm is the *sine qua non* of preliminary injunctive relief.

*See* Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief

in the federal courts has always been irreparable harm and inadequacy of legal remedies") (footnote

omitted). In the instant case, the Domestic Producers have proffered no affidavits or other specific,

particularized evidence to establish that they will suffer irreparable harm absent an injunction

prohibiting liquidation of future, post-POR entries. Instead, they rely solely on Zenith.[13]   *See*

given the weight or lack of it assigned the other factors, *to justify the denial*.

FMC Corp., 3 F.3d at 427 (emphases added) (citations omitted). Elsewhere, the Court of Appeals
has emphasized that, "irrespective of relative or public harms, a movant must establish both a
likelihood of success on the merits *and* irreparable harm." Reebok Int'l Ltd. v. J. Baker, Inc., 32
F.3d 1552, 1556 (Fed. Cir. 1994). A trial court therefore "may deny a preliminary injunction based
on the movant's failure to establish either of these two crucial factors without making additional
findings respecting the other factors." *Id*.

As discussed below, the Domestic Producers here have failed to prove irreparable harm.
Accordingly, at least under Reebok, there is no need to reach the remaining three factors. The
analysis nevertheless proceeds to conclusion, since "it is always preferable . . . [to] make findings
regading each of the four factors which weigh in the balance concerning whether to deny a
preliminary injunction." Reebok, 32 F.3d at 1555.

[13]*See* FMC Corp., 3 F.3d at 430 (applicant for preliminary injunction "failed to proffer any
evidence to establish irreparable harm or the extent thereof, choosing instead to rely exclusively on
Zenith."); American Spring Wire Corp., 7 CIT at 4, 578 F. Supp. at 1406 (applicants for preliminary
injunction "submitted no affidavits and . . . offered no testimony to substantiate their claim of
irreparable injury. . . . Instead they rel[ied] exclusively upon . . . Zenith . . ."). *See also* Zenith, 710
F.2d at 809 (noting that "evidence of specific competitive injury to Zenith would establish a more
compelling showing of irreparable injury warranting injunctive relief"). *Compare, e.g.*, Timken Co.
v. United States, 11 CIT 504, 666 F. Supp. 1558 (1987) (preliminary injunction denied based on
failure to establish irreparable harm, notwithstanding applicant's submission of detailed affidavits,
field reports, and live testimony on subject of harm).

Domestic Producers Brief at 5-7 (*citing* Zenith, 710 F.2d 806); Domestic Producers Reply Brief at

2. That reliance is misplaced.

Zenith establishes the existence of irreparable harm only as to entries *during* the POR; and

the POR entries at issue in this action are already the subject of a preliminary injunction. Contrary

to the Domestic Producers' implication, courts have consistently refused to read Zenith to extend to

the sort of additional *prospective* injunctive relief that the Domestic Producers here seek.

As the Court of Appeals recognized in Zenith, the threat of irreparable harm in administrative

review cases stems from the fact that the consequence of the liquidation of the merchandise entered

during the POR would be to effectively moot the case, entirely depriving a plaintiff of judicial

review:

> Once liquidation occurs, a subsequent decision by the trial court on the merits of
> Zenith's challenge can have no effect on the dumping duties assessed on entries . .
> . during the '79-'80 review period. Any change in deposit amounts that might be
> required [as a result of the trial court's decision] . . . could not affect the amount of
> dumping duty actually assessed on the '79-'80 entries or any subsequent entries.

Zenith, 710 F.2d at 810.

The Court of Appeals in Zenith emphasized that – absent an injunction prohibiting the

liquidation of POR entries – the trial court "would be powerless to grant the only effective remedy

in response to Zenith's request for review: assessment of correct dumping duties on entries

occurring during the '79-'80 review period, " and that "[j]udicial review of the challenged [agency]

determination [would] therefore provide no tangible benefit for Zenith, making that [judicial] review

unavailing." *Id*. (emphasis added). *See also* Altx, Inc. v. United States, 26 CIT 735, 211 F. Supp.

2d 1378 (2002).

A party challenging the outcome of an administrative review thus must obtain an injunction suspending liquidation of the POR entries in order to preserve its "right to have the administrative determination reviewed, *with respect to that specific period*." FMC Corp., 3 F.3d at 431 (emphasis added). Otherwise, the liquidation of the POR entries during the pendency of litigation would eliminate the Court of International Trade's power to review the Commerce Department's determination. *See generally* Zenith, 710 F.2d at 810 (explaining that statutory scheme precludes CIT from reliquidating entries); Coal. for the Preserv. of Am. Brake Drum and Rotor Aftermkt. Mfrs. v. United States, 29 CIT ____, ____, 2005 WL 1459830 at \*\* 1-2 (2005) (dismissing case for lack of jurisdiction where plaintiff failed to seek injunction suspending liquidation).

In short, Zenith stands for the proposition that a party's deprivation of a judicial remedy constitutes "irreparable harm" for purposes of a four factors analysis, in the context of the potential liquidation of POR entries during the pendency of a case challenging the results of an administrative review. Zenith does not speak to a prospective injunction of liquidation of future entries outside the POR, such as that sought by the Domestic Producers in this case. *See generally* Torrington, 20 CIT at 1295 ("Zenith provides support for a contention of irreparable injury regarding POR entries only").

Here, the liquidation of post-POR entries will not moot the Domestic Producers' challenge to the results of the 2003-2004 administrative review, and thus will not deprive the Domestic Producers of a judicial remedy. There is thus no truth to their claim that "because Commerce has deemed ICDAS eligible to have the antidumping duty order against the company revoked, any opportunity to ensure that subsequent entries of merchandise are assessed antidumping duties would

be forever lost" in the absence of a prospective injunction. *See* Domestic Producers Brief at 5. Although it is true that some post-POR entries may be liquidated during the pendency of this action, the courts nevertheless will be able to grant effective relief as to both POR entries *and* future entries, should the Domestic Producers ultimately prevail on the merits.[14] *See generally* Sandoz Chems. Corp. v. United States, 17 CIT 1061, 1063 (1993) ("liquidation does not substantially curtail available judicial remedies" when entries at issue are not limited to discrete time period); Timken Co., 11 CIT at 507, 666 F. Supp. at 1560 ("Even though some entries will be liquidated without additional duties, appropriate relief may be fashioned prospectively" if plaintiff ultimately prevails on the merits).

Based on the rationale outlined above, courts in other cases like this one have uniformly declined to enjoin the liquidation of future, post-POR entries. *See*, *e.g.*, FMC Corp., 16 CIT at 381, 792 F. Supp. at 1287 (where case involves not only a challenge to the results of an administrative review, but also the resulting revocation of an antidumping order, the antidumping order is reinstated as to future entries of merchandise if plaintiff ultimately prevails on the merits; thus, "[p]laintiff's remedy will not disappear if entries are liquidated during the course of [the judicial] proceeding"), *aff'd on other grounds*, 3 F.3d 424 (Fed. Cir. 1993); Torrington, 20 CIT at 1295 (same).

---

[14]The Court thus will be able to grant *a* remedy, even if it is not *the* remedy that the Domestic Producers would prefer. *Cf.* American Air Parcel Forwarding Co. v. United States, 718 F.2d 1546, 1551 & n.4 (Fed. Cir. 1983) (explaining, "That importers here could fashion a more desirable remedy does not make the remedy fashioned by Congress constitutionally inadequate," and that while "[i]t is true that injunctive and declaratory relief is a more desirable remedy in plaintiffs' view, . . . 'the mere fact that more desirable remedies are unavailable does not mean that existing remedies are inadequate.'") (*quoting* J.C. Penney Co. v. U.S. Treasury Department, 439 F.2d 63, 68 (2d Cir. 1971)).

As ICDAS observes, Torrington is squarely on point.  *See* ICDAS Brief at 5.  There, as here, the Commerce Department found *de minimis* margins for the foreign exporter's entries during the POR at issue.  Torrington, 20 CIT at 1294.  And there, as here, the POR at issue was the third consecutive review period in which the foreign exporter was found not to have made sales at less than fair value.  Therefore, there – as here – the Commerce Department also revoked the antidumping duty order as to the exporter in question.  *See* Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from Thailand; Final Results of Antidumping Duty Administrative Review and Revocation of Antidumping Duty Order, 61 Fed. Reg. 33,711, 33,714 (June 28, 1996); Final Results of Turkish Rebar Administrative Review, 70 Fed. Reg. at 67,666.

In Torrington, the Court of International Trade initially granted the plaintiff domestic producer's motion for a preliminary injunction, which covered not only entries during the POR, but also future entries as well.  But the court later reversed itself, and vacated the injunction as to post-POR entries.  Torrington, 20 CIT at 1294-95.

Indeed, the courts have denied requests to enjoin the liquidation of future entries in a growing line of cases, in a wide range of contexts.  *See, e.g.*, Neenah Foundry Co. v. United States, 24 CIT 33, 39-40, 86 F. Supp. 2d 1308, 1313-15 (2000) (appeal of Commerce Department sunset review determination); Sandoz Chems. Corp., 17 CIT at 1063 (appeal of ITC final negative injury determination); Timken, 11 CIT at 506-07, 666 F. Supp. at 1559-60 (appeal of Commerce Department decision to exclude exporter from scope of dumping determination).[15]

---

[15]*See also* Dupont Teijin Films USA, LP v. United States, 27 CIT ____, ____, 2003 WL 22881546 *2 (2003) (appeal of Commerce Department less than fair value determination);  Fuyao Glass Indus. Group Co. v. United States, 27 CIT ____, ____, 2003 WL 22058668 * 3 (2003) (appeal

In American Spring Wire, for example, the plaintiffs sought to enjoin liquidation of all entries of the subject merchandise pending their appeal of final negative injury determinations by the International Trade Commission ("ITC"). American Spring Wire Corp., 7 CIT at 3, 578 F. Supp. at 1405-06. The court rejected the plaintiffs' application, reasoning that their right to a judicial remedy was not in jeopardy – even though some entries might well be liquidated in the meantime:

> [The ITC's determination] will, as a practical matter, extend *in futuro*, unless upset by an intervening judicial decision. And should this court ultimately reverse the Commission's negative injury determinations, antidumping and countervailing duties can still be assessed at that time on all unliquidated as well as future entries pursuant to an affirmative injury determination. Thus, unlike the [administrative review] context [where liquidation of POR entries must be suspended to preserve a judicial remedy], plaintiffs will unquestionably have meaningful judicial review regardless of whether an injunction now issues.

American Spring Wire, 7 CIT at 5, 578 F. Supp. at 1407 (footnote omitted).

The Domestic Producers here have failed even to address – much less distinguish – Torrington and the numerous other cases that ICDAS and the Government relied on in the course of the November 15, 2005 hearing, and which are cited in ICDAS's brief. Nor does it appear that they can they do so. Simply stated, liquidation itself does not constitute legally cognizable "irreparable harm," except when it operates to effectively deprive a party of its judicial remedy. The instant case is not such a case.

---

of antidumping duty order); Shandong Huarong Gen. Group Corp. v. United States, 24 CIT 1279, 1285, 122 F. Supp. 2d 1367, 1372 (2000) (appeal of Commerce Department administrative review determination); Budd Co. Wheel & Brake Div. v. United States, 12 CIT 1020, 1023, 700 F. Supp. 35, 37 (1988) (appeal of Commerce Department antidumping duty determination); Bomont Indus. v. United States, 10 CIT 431, 436, 638 F. Supp. 1334, 1339 (1986) (appeal of Commerce Department decision to exclude foreign producers from antidumping determination). *Cf.* NMB Singapore Ltd. v. United States, 14 CIT 1239, 120 F. Supp. 2d 1135 (2000); Ugine-Savoie Imphy v. United States, 24 CIT 1246, 121 F. Supp. 2d 684 (2000).

In sum, the Domestic Producers have failed to demonstrate that – absent an injunction restraining liquidation of future, post-POR entries – they will suffer *any* legally cognizable irreparable harm.[16]  Certainly they have not shown that any such harm is "immediate," as the law requires to justify the extraordinary relief they seek.  *See* Zenith, 710 F.2d at 809 (to prevail on application for preliminary injunction, litigant must show, *inter alia*, "that it will be *immediately* and irreparably injured") (emphasis added).

The failure to prove the existence of at least *some* irreparable harm virtually dooms the Domestic Producers' application for a preliminary injunction restraining liquidation of future, post-POR entries.  In other words, the complete absence of irreparable harm would essentially defeat the Domestic Producers' motion even if they made a strong case on other factors of "four factors" test.  *See* S.J. Stile Associates Ltd. v. Snyder, 646 F.2d 522, 525 (CCPA 1981) ("The trial court must be upheld if it . . . properly concluded that *any one* of [the four] requisites for a preliminary injunction had not been established" by the movant) (emphasis added); Zenith, 710 F.2d at 809 ("To prevail

_____

[16]As noted above, the Domestic Producers have relied exclusively on Zenith, and have failed to proffer any evidence of irreparable harm beyond the potential for liquidation.  Such evidence is required, however, where – as here – liquidation alone does not constitute legally cognizable irreparable harm. *See*, *e.g.*, Trent Tube Div., Crucible Materials Corp. v. United States, 14 CIT 587, 588, 744 F. Supp. 1177, 1179 (1990) (denying injunction where movants failed to adduce sufficient evidence of harm other than potential for liquidation); Altx, 26 CIT at 737-38, 211 F. Supp. 2d at 1381-82 ("[T]o support a finding of irreparable harm, Altx must present additional evidence establishing irreparable injury" other than mere prospect of liquidation); Timken, 11 CIT at 507, 666 F. Supp. at 1560 (where plaintiff challenged agency decision to exclude foreign exporter from scope of an antidumping finding, potential for liquidation was held to be insufficient to establish irreparable harm; "[s]ome further affirmative showing on plaintiff's part as to irreparable injury is required."). *See also* ICDAS Brief at 8 n.1 (*citing* FMC Corp., 3 F.3d at 431, and asserting that Domestic Producers here would find it "exceedingly difficult" to show irreparable harm, since "the Department of Commerce has consistently found that the dumping margins for ICDAS' sales to the United States since 1999 have been zero or *de minimis*.").

on its motion for a preliminary injunction, Zenith *must show* [the four factors].") (emphasis added) (citations omitted). *Cf.* n.12, *supra*. In any event, as discussed below, the Domestic Producers' showing on the remaining three factors is similarly underwhelming.

2. The Likelihood of Success on The Merits

The Domestic Producers' argument on the second of the four factors proceeds from the premise that they have "firmly established" irreparable harm. *See* Domestic Producers Brief at 7. Based on that premise, the Domestic Producers assert that – to prevail on the second factor, the likelihood of success on the merits – they need only "raise[ ] questions which are serious, substantial difficult, and doubtful." *Id.* (*citing* Timken Co. v. United States, 6 CIT 76, 80, 569 F. Supp. 65, 70 (1983)).

The premise of the Domestic Producers' argument is flawed. As set forth above, the Domestic Producers have made *no* showing of legally cognizable irreparable harm. Moreover, even if they had in fact "firmly established" such harm, it is not clear that the standard they cite for "likelihood of success on the merits" would be the proper one. *See* U.S. Association of Importers of Textiles and Apparel v. U.S. Dep't of Commerce, 413 F.3d 1344, 1347 (Fed. Cir. 2005) (withholding judgment on application of "serious, substantial, difficult, and doubtful question" standard).

In any event, as discussed below, the Domestic Producers have failed to demonstrate even a "fair chance of success on the merits" – "the less demanding . . . standard for proving the likelihood of success prong." *Id.*

In arguing that they are likely to succeed on the merits of their case, the Domestic Producers put all their eggs in one basket, focusing solely on their "date of sale" claim, and making no representations as to the merits of their second claim (*i.e.*, their claim that certain of ICDAS's sales should have been treated as CEP sales). *See* Domestic Producers Brief at 7-8; Domestic Producers Reply Brief at 1-2.

Even as to their "date of sale" claim, the Domestic Producers emphasize the procedural errors in the Commerce Department's handling of the issue. *See*, *e.g.*, Domestic Producers Brief at 7-8; Domestic Producers Reply Brief at 1-2.[17] Procedural safeguards are important, to be sure. Indeed, this matter is already on remand to the agency, so that the procedural defects that the Domestic Producers have identified may be cured. *See* Order (Nov. 28, 2005). However, the fact that the Commerce Department committed procedural errors in reaching its final "date of sale" determination does not *ipso facto* mean that its determination is substantively wrong, and thus does not necessarily indicate that the Domestic Producers are ultimately likely to prevail on the substantive merits of their claim that the correct date of sale is the date of ICDAS's commercial invoice.

In their reply brief, the Domestic Producers go beyond cataloguing the procedural problems with the Commerce Department's "date of sale" determination, and affirmatively state that "the date of sale, and therefore, the Department's treatment of material contract terms will likely change on

---

[17]The Domestic Producers assert, for example, that "Commerce, *sua sponte*, reversed its own findings concerning the proper date of sale as it pertains to ICDAS. Commerce initially determined that the correct date of sale is the date of ICDAS' commercial invoice; the information was confirmed at verification. Subsequently, neither ICDAS nor Petitioners raised this issue in their pleadings or in their briefs. Despite all this, Commerce, without any factual support or record evidence, reversed its findings and altered its determination with respect to date of sale. Further, Commerce cited to non-existent evidence to support its finding." Domestic Producers Brief at 8.

remand." *See* Domestic Producers Reply Brief at 2. Yet the Domestic Producers cite no evidence and offer no rationale to substantiate that bald assertion. Whatever the basis for their confidence as to the results of the remand proceeding, the Domestic Producers have failed to put it on the record for purposes of their pending motion.[18]

The Government has stated that "a change in the date of sale determination would likely result in the reinstatement of the antidumping duty order" as to ICDAS. *See* Government Brief at 3. But that statement is, at most, a prediction of the probable consequences *if* the "date of sale" were to be changed. The statement says nothing about the likelihood of such a change, and thus does not speak to the likelihood that the Domestic Producers will ultimately succeed on the merits of their "date of sale" claim.

One of the two alternative draft proposed orders proffered by the Government in seeking a voluntary remand on the "date of sale" issue did include language to the effect that "defendant's request for a remand will likely result in a change in the date of sale determination." *See* Government Brief at second attachment. It is unclear, however, whether that language in the draft order accurately reflects the Government's position, since the language is at least somewhat at odds with the position articulated in the Government's brief itself (and since briefs are typically written and reviewed more carefully than the draft proposed orders that accompany them). In any event, like the Domestic Producers' statement concerning the "likely" results of the remand, the language in the

---

[18]Even if the Commerce Department were to change the date of sale on remand (as the Domestic Producers predict), it would remain to be seen whether that change would be sustained in this action. *See* Trent Tube, 14 CIT at 589, 744 F. Supp. at 1179 (although applicants for preliminary injunction "contended that they had a significant likelihood of success on the merits since the remand determination resulted in their favor," court noted that it "ha[d] not affirmed the remand result and believe[d] plaintiffs' assumption of the Court's affirmation to be premature").

draft proposed order is bald speculation.  Like the Domestic Producers' papers, the Government's papers too are devoid of evidence, argument, or rationale to support a finding that, on remand, the Commerce Department "will likely . . . change . . . the date of sale determination."

Only ICDAS articulates the rationale underlying its position on the probable outcome of the remand on the "date of sale" issue.  And, not surprisingly, ICDAS's position contrasts sharply with that of the Domestic Producers.  According to ICDAS, "if Commerce reviews all facts relevant to the date of sale determination, . . . Commerce should reaffirm its conclusion that the more appropriate date of sale for U.S. sales by ICDAS is the date of contract, that ICDAS' dumping margin is *de minimis*, and that Commerce's revocation of the Order as to ICDAS was correct." *See generally* ICDAS Brief at 1-2.

ICDAS points out that the "date of sale" issue is now the subject of three cases before the Court of International Trade involving the antidumping order on rebar from Turkey.[19]  ICDAS notes that in one of the other two cases – Colakoglu – the Government previously sought, and the court granted, a voluntary remand on the "date of sale" issue.  ICDAS Brief at 2 (*citing* Colakoglu Metalurji A.S. v. United States, 29 CIT ____, ____, 394 F. Supp. 2d 1379, 1381 (2005)).

In Colakoglu, for the 2002-2003 review, the Commerce Department had used the earlier of invoice or shipment date as the date of sale for Colakoglu's U.S. sales.  After reconsidering the issue on remand, the agency reversed its position.  Thus, with the final results in that remand due to be

_____

[19]The other two cases are Colakoglu, Court No. 04-00621, which involves the 2002-2003 administrative review of the order, and Habas Sinai ve Tibbi Gazlar İstihsal Endustrisi A.S. v. United States, Court No. 05-00613 (filed Nov. 10, 2005), which – like this case – concerns the 2003-2004 review.  *See* ICDAS Brief at 2.

filed with the court in January, the Commerce Department is currently considering comments on its November 18, 2005 "Draft Results of Redetermination Pursuant to Court Remand," in which the agency indicates that the date of sale for U.S. sales by Colakoglu should be the "order" (or contract) date. *See* ICDAS Brief at 2. As ICDAS emphasizes, that is the same date of sale that the Commerce Department used for ICDAS's sales in the 2003-2004 review, which is at issue here. And, according to ICDAS, "a full review of all relevant facts will confirm on remand" that "that is the date that better reflects the date on which the material terms of sale were established for U.S. sales by ICDAS." *See* ICDAS Brief at 2.[20]

Apart from their bald, unsupported prediction as to the results of the remand on the "date of sale" issue, the Domestic Producers have pointed to nothing to substantiate their assertion that they are ultimately likely to prevail on their claims. The Domestic Producers have thus failed to demonstrate even a "fair chance of success on the merits."

Even if it is not *per se* fatal (*see* note 12 above), "[t]he failure to prove a likelihood of success on the merits presents a formidable obstacle to the granting of an injunction, particularly where the injury factor is weak." FMC Corp., 3 F.3d at 431; *see also id*. at 427 ("Absent a showing that a movant is likely to succeed on the merits, we question whether the movant can ever be entitled to a preliminary injunction unless some extraordinary injury or strong public interest is also shown.").

---

[20]The timeline of events at the administrative level suggests that it is at least possible that the Commerce Department's *sua sponte* reversal of its position on the "date of sale" issue between the preliminary results and the final results in this case may have been influenced by the agency's analyses and deliberations in the course of the Colakoglu remand, which apparently was also pending before the agency at the time.

In the instant case, the irreparable harm is not merely "weak" – it is non-existent. And, as discussed below, the public interest does not compensate.

### 3. The Public Interest and the Balance of Hardships

The Domestic Producers contend that the public interest and the balance of hardships also militate in favor of the requested injunction. *See generally* Domestic Producers Brief at 7-9; Domestic Producers Reply Brief at 2. But their recitations on both counts are largely *pro forma*.[21]

The Domestic Producers assert broadly that "[t]he public interest is best served by effective enforcement of the trade laws, by ensuring that accurate amounts of antidumping duties are assessed on entries covered by antidumping duty orders, and by ensuring that entities, to the extent that they continue to sell merchandise at less than fair value, remain subject to antidumping duty orders." Domestic Producers Brief at 8 (*citing* Smith-Corona Group v. United States, 1 CIT 89, 98, 507 F. Supp. 1015, 1023 (1980), *aff'd*, 713 F.2d 1568 (Fed. Cir. 1983) ("the public interest is best served by preventing entries subject to antidumping duties from escaping the correct amount of such duties")).

The Domestic Producers' argument on public interest is a virtual truism – entirely unobjectionable, and the international trade law equivalent of invoking flag, motherhood, and apple

---

[21]The other parties are relatively mum on the last two of the four factors. Indeed, the Government says nothing at all in its brief; and ICDAS addresses the balance of hardships in a footnote. *See* ICDAS Brief at 8 n.l.

pie.[22]   However, the argument is, on its face, predicated on the assumption that ICDAS is

"continu[ing] to sell merchandise at less than fair value" and therefore should "remain subject to

[the] antidumping duty order[]" – a proposition that is both vigorously disputed by ICDAS and

contrary to the Commerce Department's final determination in this matter.  Even more importantly,

the Domestic Producers have failed to explain how the public interest in this case can be

distinguished from the public interest in the many other similar cases where prospective injunctions

were found to be unwarranted.[23]

The Domestic Producers' case on the fourth factor – relative hardships – is no stronger.  The

Domestic Producers contend that any hardship to other parties resulting from a delay in liquidation

would be "outweighed by the irreparable harm" that the Domestic Producers assertedly will suffer

if the injunction that they seek does not issue.  *See* Domestic Producers Brief at 7.  But the sole claim

of hardship that they assert is that their "right to obtain meaningful judicial review as to the duties

on POR entries is at stake."  *Id*.  And their rights vis-a-vis POR entries are protected by the

preliminary injunction already in place.  The Domestic Producers' papers identify no other legally

cognizable harm with which they are threatened.  *See* section II.B.1, *supra*.

---

[22]Similar language – invoking basically the same principles and values – is recited in virtually every application for a preliminary injunction in cases such as this.  *See*, *e.g.*, NSK Ltd. v. United States, 28 CIT ____, ____, 350 F. Supp. 2d 1128, 1133 (2004); PAM, 28 CIT at ____, 347 F. Supp. 2d at 1366; Elkem Metals Co. v. United States, 25 CIT 186, 196, 135 F. Supp. 2d 1324, 1335 (2001); Neenah Foundry, 24 CIT at 43, 86 F. Supp. 2d at 1317; Trent Tube, 14 CIT at 589, 744 F. Supp. at 1179.

[23]*See also* Elkem Metals, 25 CIT at 196, 135 F. Supp. 2d at 1335 (noting that "it is impossible to determine whether the relief requested would effect [the undisputed] public policy" interest in effectuating the purpose of the international trade laws).

Just as the Domestic Producers overstate the hardship that they face in the absence of the requested injunction, they also understate the hardship that such an injunction would impose on other parties. Specifically, the Domestic Producers assert that enjoining future liquidation would "at most 'inconvenience[]'" the Government and interested private parties, and that "[i]f any refunds of duties are ultimately owed to private parties, they will receive the amounts with interest, thereby compensating for any delay." Domestic Producers Brief at 7 (*quoting* Timken, 6 CIT at 81, 569 F. Supp. at 70).

As ICDAS notes, however, there are other potential hardships that the Domestic Producers' calculus does not take into account. For example, in analyzing relative hardships, the Court of International Trade in the past has weighed the fact that suspending liquidation would "cause uncertainty" for producers, exporters, importers and others in the marketplace. *See* ICDAS Brief at 8 n.1 (*citing* Timken, 11 CIT at 509, 666 F. Supp. at 1561). *See also*, *e.g.*, Elkem Metals, 25 CIT at 196-97, 135 F. Supp. 2d at 1335-36 (noting "the potential consumer harm associated with the suspension of liquidation," and weighing "price uncertainty" that would be caused by stay of liquidation) (*citing* Algoma Steel Corp., 12 CIT at 806, 696 F. Supp. at 660 (discussing congressional "concern regarding the 'commercial uncertainty related to the suspension of liquidation,' as expressed in legislative history of Trade Agreements Act of 1979)); Trent Tube, 14 CIT at 589, 744 F. Supp. at 1180 (weighing "uncertainty to the importers and independent businesses as to the ultimate price of the goods" that would result from stay of suspension of liquidation) (*quoting* Timken, 11 CIT at 509, 666 F. Supp. at 1561).

In short, just as the Domestic Producers have failed to demonstrate that they will suffer any legally cognizable irreparable harm absent the requested injunction or that they have even a "fair chance" of success on the merits of their case, so too they have not established either that the prospective injunction they seek would serve the public interest or that the balance of hardships tips in their favor.

## III. Conclusion

As set forth above, the Domestic Producers here have failed to make the requisite showing to satisfy the "four factors" test for the truly extraordinary relief that they seek. The Domestic Producers have identified no other similar case in which the liquidation of future entries has been enjoined. And they have failed to distinguish this case from the many others in which such relief has been denied. Accordingly, the Domestic Producers' application for a prospective preliminary injunction restraining liquidation of future, post-POR entries must be, and hereby is, denied.

So ordered.

_____/s/_____
Delissa A. Ridgway
Judge

Dated: December 30, 2005
New York, New York

ERRATA

Nucor Corporation, Gerdau AmeriSteel Corporation, and Commercial Metals Company v. United States and ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S., Court No. 05-00616, Slip Op. 05-168, dated December 30, 2005.

Page 1:     In the last line, replace "(Lawrence A. Schneider)," with "(Lawrence A. Schneider),".

Page 5:     In the fourth line, replace "(2003)." with "(2003); Chr. Bjelland Seafoods A/S v. United States, 19 CIT 35, 50-52 (1995)."

            In the seventh line, replace "§ 1561a(c)(2)." with "§ 1516a(c)(2)."

Page 7:     In the penultimate line of footnote 6, replace "(1993)" with "(Fed. Cir. 1993)".

Page 13:    In the last line of footnote 13, replace "(discussing All Writs Act)." with "(discussing All Writs Act); Oki Elec. Indus. Co. v. United States, 11 CIT 624, 632, 669 F. Supp. 480, 486 (1987) (invoking, *inter alia*, All Writs Act)."

Page 14:    In the penultimate line of footnote 12, replace "regading" with "regarding".

            At the end of footnote 13, add a new paragraph:

            Denying a prospective injunction in a somewhat different context, the court found that the applicants had failed to establish irreparable harm notwithstanding their submission of affidavits of corporate officials which described "the anticipated effect of increased deposit rates" (predicting the potential elimination of several exporters from the U.S. market) and which included "customer letters and descriptions of conversations with customers in which the customers state that they have switched or will switch suppliers rather than pay the higher deposit rate":

                        [P]laintiffs' affidavits do not even contend that they are in danger of bankruptcy [in contrast to Queen's Flowers de Colombia v. United States, 20 CIT 1122, 947 F. Supp. 503 (1996)]. Furthermore, even if they did claim a threat of extinction, affidavits submitted by interested parties are weak evidence, unlikely to justify a preliminary injunction. Plaintiffs submitted no evidence from independent sources, and produced no witnesses available for cross-examination at the preliminary injunction hearing. "No marketing studies, written financial data or other hard evidence of the serious permanent harm which would result from denial of the injunction was presented." Chilean Nitrate Corp. v. United States, 11 CIT 538, 541

> (1987). If the court were to grant plaintiffs' motion on so little evidence, it would essentially be holding that any substantial increase in deposit rates before a final court decision constitutes irreparable harm *per se*. Future petitioners would be able to forestall the application of new deposit rates in many, if not most, antidumping or countervailing duty determinations contested in court.

> Shree Rama Enterprises v. United States, 21 CIT 1165, 1167-68, 983 F. Supp. 192, 195 (1997).

Page 15:     In the penultimate line, delete "(emphasis added)."

Page 16:     In line two of the third paragraph, replace "and thus will" with "and therefore will".

Page 18:     In the third line, replace "at 1294." with "at 1293."

Page 19:     In footnote 15, delete "Shandong Huarong Gen. Group Corp. v. United States, 24 CIT 1279, 1285, 122 F. Supp. 2d 1367, 1372 (2000) (appeal of Commerce Department administrative review determination);".

             In the penultimate line of footnote 15, replace "14 CIT" with "24 CIT".

Page 21:     In the fourth line of the first full paragraph, insert a comma after "substantial".

Page 22:     In the fifth line of the second paragraph, replace "(Nov. 28, 2005)." with "(Dec. 15, 2005)."

Page 27:     In the last line of the text, replace "cognizable harm" with "cognizable irreparable harm".

Page 28:     In the tenth line of the second paragraph, insert closing quotation marks after "liquidation,' ".

April 25, 2006